[Crim. No. 198.    Second Appellate District.—November 21, 1911.]

## THE PEOPLE, Respondent, v. DAVID CROSBY, Appellant.

CRIMINAL LAW—VERDICT AND REFUSAL TO ARREST JUDGMENT NOT APPEALABLE.—No appeal lies in a criminal case, either from the verdict of the jury or from an order denying a motion in arrest of judgment.

ID.—REVIEW ON APPEAL AT TIME OF JUDGMENT—INCLUSION OF NONAPPEALABLE MATTERS IMMATERIAL — RIGHT OF APPEAL NOT LOST.— Where the statute providing for the taking of an appeal in open court at the time of pronouncing judgment prescribes no form of notice, but merely requires that defendant shall, in open court, at the time the judgment is pronounced, state that he appeals, it is immaterial whether or not a previous order denying a motion for a new trial is or is not appealable; but when it clearly appears that it was defendant's intention to seek a review of every adverse ruling of the court, he should not be deprived of his right of appeal, or to a review upon appeal from the judgment, merely on account of his notice including nonappealable matters.

ID.—PROSECUTION FOR RAPE—WEAKNESS OF EVIDENCE—SUPPORT OF VERDICT.—In a prosecution for rape committed upon a young woman seventeen years of age, though the evidence of the prosecutrix is, in some respects, weak and unsatisfactory, yet, inasmuch as there was evidence tending to sustain the theory of the prosecution that she was drugged with a narcotic placed in wine administered by the defendant, and that she was too weak and dizzy to make an outcry when he led her to the place where the alleged rape was committed, the question of the defendant's guilt was one of fact for the jury, and its verdict would not be disturbed, except for error otherwise appearing.

ID.—MISCONDUCT OF DISTRICT ATTORNEY.—It was misconduct of the district attorney to ask the prosecuting witness whether the defendant said anything to her "about putting you in a house of ill-fame in

Los Angeles, as he had done with other girls before that" and where it was objected to both as leading and also assigned as gross misconduct on the part of the district attorney, it is held that the record is inconsistent with any theory which could justify or excuse the district attorney's misconduct; and it was apparent that such question asked at the close of the examination of the prosecuting witness was not intended to secure a favorable answer, but to get before the jury a statement in the guise of a question that would prejudice them greatly against the defendant.

Id.—Improper Ruling of Court — Misconduct not Passed upon.— Where the court simply sustained the objection on the sole ground that the question was misleading, and made no allusion in its ruling to the assignment of misconduct, its ruling was, by implication, at least, that his action was not misconduct, and his misconduct was accentuated by an error in the ruling of the court.

Id.—Duty of Court.—When the attention of the court was directed to the act of the district attorney, and the same was assigned as misconduct, it was the duty of the court to reprimand the district attorney, and admonish the jury to disregard the statement of the district attorney, and the matters suggested by the question; thus, if possible, destroying the baneful effect thereof.

APPEAL from a judgment of the Superior Court of San Diego County.   T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

Lewis R. Kirby, Oval Pirkey, and Eugene Daney, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

SHAW, J.—Defendant was convicted of the crime of rape, and appeals from the judgment whereby he was sentenced to state prison for a term of twenty years.

Respondent insists that defendant is not entitled to a review of the alleged errors presented herein, for the reason that no appeal was taken from the final judgment.   After defendant's counsel had made a purported motion for a new trial and motion in arrest of judgment, both of which were overruled, the court pronounced its judgment; whereupon counsel for defendant said: "At this time I would like to give notice of appeal, to the court and district attorney—appeal in this case

from the verdict and the judgment of the court denying the motion for a new trial and arrest of judgment.'' No appeal lies from the verdict (Pen. Code, sec. 1237; *People* v. *Garwood,* 11 Cal. App. 665, [106 Pac. 113]); nor from an order in arrest of judgment (Code citation, *supra; People* v. *Mullen,* 7 Cal. App. 547, [94 Pac. 867]); and it is contended by respondent that under the method adopted in 1909, prescribing the manner of taking appeals in criminal cases, no appeal lies from an order denying a motion for a new trial. Without so holding, but conceding respondent's position, that an appeal in a criminal case must be from the final judgment, we are, nevertheless, constrained to hold that the statement of defendant's counsel made, not upon the denial of the motions, but at the time the judgment was pronounced, must be deemed a sufficient compliance with the statute. It clearly appears that it was defendant's intention to seek a review of every adverse ruling of the court; and where such is the case, he should not be deprived of his right of appeal merely on account of the notice including orders from which no appeal lies. The statute prescribes no form of notice, but requires that defendant shall in open court at the time judgment is rendered announce that he appeals.

The grounds upon which appellant insists upon a reversal, and which merit consideration, are: First, that the evidence is insufficient to justify the verdict; second, misconduct on the part of the district attorney; and, third, the refusal of the court to give to the jury certain instructions requested by him.

Rape, as defined by section 261, Penal Code, ''is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances: . . .

''3. Where she resists, but her resistance is overcome by force or violence;

''4. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, or by any intoxicating narcotic, or anaesthetic substance, administered by or with the privity of the accused.''

It appears from her own testimony that the prosecuting witness was a female, over the age of seventeen years, living at her home with her family in San Diego; that on Sunday,

February 19, 1911, defendant, an entire stranger, called with
the purpose of employing her to display advertising cards in
a drug-store, where he was introducing and selling some sort
of patent medicine; that she accepted the employment and
went to work the following morning; that at noon defendant
asked her to lunch and to go to dinner that evening with him;
that while she did not go to lunch with him, she did, at
about 5:30 in the evening, accompany him to a public restau-
rant, where they were served in a public dining-room by one
of the waiters, who, with the meal, served them with some
red wine from a bottle, and that she drank one glassful
thereof; that they remained at the restaurant from 5:30 until
about 11 o'clock P. M., during which time she asked defend-
ant to take her home, and he told her he was not going to
take her home; that they left the restaurant, proceeding down
one of the prominent streets for a distance of several blocks,
passing other pedestrians on the street, and went upstairs to
a lodging-house where she stood by while defendant registered,
after which the landlord and defendant proceeded up another
flight of stairs to the room assigned them, and she, following
behind without protest, entered the room and spent the night
in the embraces of defendant; that she knew it was wrong
and improper for her to go with defendant to the room in
this lodging-house, but that defendant said he would make
it good for her if she did not go, and that she did not make
any outcry, or ask assistance, because defendant said he would
slap her. No good purpose could be subserved by further
narrating the evidence; suffice it to say that it wholly fails
to bring the case within subdivision 3 of section 261, Penal
Code, in that the record does not disclose any resistance on
the part of the prosecutrix, or the use of force and violence
on the part of defendant. It is clear that she had ample op-
portunity to leave defendant at the restaurant, on the street,
and in the lodging-house, in each and all of which places the
slightest cry or intimation of danger would, if required, have
brought aid and protection. Notwithstanding this fact, she
voluntarily accompanied defendant to the room, conscious of
the purpose of going there and the impropriety of the act.

It is likewise clear that the evidence is insufficient to show
that the prosecutrix was ''prevented from resisting by threats
of great and immediate bodily harm, accompanied by apparent

power of execution," as provided by subdivision 4 of said section 261. As a reason for not calling assistance, she assigns the fact· that defendant said he would slap her face if she did. Surely it cannot be seriously claimed that any great bodily harm could have resulted from the execution of such threat. Her testimony shows that she told defendant that her folks would not like her being in a room with him, and that he said he would shoot her if she got out. It also appears that when defendant left the room in the morning he said to her that if, when he came back, he found her gone, he would shoot her. Giving these threats the full import of the words used in making them, nevertheless, they were not accompanied by any apparent power of execution. Moreover, they were not threats of *immediate* bodily harm, but had reference alone to what defendant would do in the future and after she had made her escape and was secure from his threatened attacks. The conduct of the prosecutrix toward defendant, from the time she went to dinner with him, as disclosed by her own testimony, is wholly inconsistent with the theory that she was prevented from resisting by reason of any *threats made by defendant.*

The only ground upon which the verdict can be justified, so far as shown by the record, is that the failure of the prosecutrix to resist was due to the fact that she was prevented from so doing by reason of some "intoxicating narcotic, or anaesthetic substance, administered by or with the privity of the accused." The prosecutrix testifies that she went to dinner with defendant about 5:30 P. M. With their meal, the waiter who served them filled their glasses with some red wine, poured from a bottle, and, she drank one glassful. They remained at the table, if not until 11 o'clock, at least several hours. The meal, she says, consisted of soup and chicken sandwiches. There is no direct testimony that the wine or food was drugged, but since it conclusively appears that she neither ate nor drank anything else during the entire time she was with defendant, her want of power to resist, if such was her condition, must be attributed to the effects of the wine which she drank several hours before going to the lodging-house with defendant. The testimony of the prosecutrix touching the question is, that after leaving the restaurant she "felt weak and dizzy," and that she went to

sleep as soon as she went to bed, and says she, "I felt weak
and dizzy, kind of." She further stated that she remem-
bered that they left the restaurant immediately after defend-
ant had paid the bill; that defendant took her arm; that she
noted as she passed down the street that some of the lights were
out in the stores; remembered going from Fourth street to
Fifth street; that she passed a number of pedestrians to whom
she said nothing; remembered going to the lodging-house,
going upstairs, and telling defendant that it was improper
for him to take her there; that defendant went up the stairs
first, and that she stood at the top of the stairs while defend-
ant went over to the landlord and engaged a room; that she
knew what she was doing when she went up the stairs to the
lodging-house, and knew that it was wrong, but excused her-
self by saying, "I had to go"; and, in reply to the question:
"You could have called for assistance there, couldn't you,
because you knew it was improper?" said: "I did not know
what I was doing; I was under the drug." And to the ques-
tion: "Did you see him give you any drug?" replied: "No."
To the question: "Why did you not call for assistance from
some of those people you were passing?" she replied: "Be-
cause I was too weak"; she made no effort to scream because
she couldn't; she didn't speak to the landlord when defendant
hired the room because, she says, "I was too weak; I did
not feel like it." Further testimony is as follows: "Q. Why
did you follow him upstairs when he hired that room, if you
knew it was wrong to go, if you did not expect to go to that
room and stay that night with Dave Crosby? A. He said if
I did not go there he would make it good for me. Q. You
could have told the landlord that this man was trying to
bring you to the house, couldn't you? A. Yes, sir. Q. But
you didn't say a word, did you? A. I was going to after-
ward. Q. After when, after you got to the room and slept
with him? A. No, sir. Q. When? A. Right after Dave got
in and locked the door. Q. Why didn't you? A. I just
happened to think about it. I was too weak and dizzy to call
for the landlord afterward." In further reply as to why
she accompanied defendant, she said: "Because I was under
the drug; I didn't know half the time what I was doing."
A physician, called as a witness, stated that some thirty-six
hours or more after the drinking of the glass of wine by the

girl he happened to see her, rather accidentally, and made a mere cursory examination of her, and that she seemed extremely nervous, somewhat dazed, and had a rapid and irregular pulse. Asked what, in his judgment, caused the condition, he replied that he did not know exactly, but that he got the impression and was of the opinion that she was suffering from the effects of something in the shape of a narcotic; what it was he did not know, and could not tell how she got it, if at all. The mother of the prosecutrix testified that the day after the occurrence her daughter was a nervous wreck; that her eyes were dull, her memory not so good, and that she seemed dazed and at times did not talk connectedly. While this evidence is weak and, from its nature, unsatisfactory, nevertheless, inasmuch as it tends to support the theory of the prosecution, and, under the law, the weight to be given it is a question for the jury, we are constrained to hold that it was sufficient to justify the verdict rendered, had the jury not been influenced in so doing by error and the misconduct of the district attorney.

The alleged misconduct consists in the act of the district attorney in asking the prosecutrix the question: "Did he [the defendant] say anything about putting you in a house of ill-fame in Los Angeles?" adding, "as he had done with other girls before that." This was the last question asked by the prosecution on redirect examination. Defendant objected to the question upon several grounds, among others, that it was leading, and assigned it as gross misconduct on the part of the district attorney, in response to which the court stated: "I do not know whether the fact that it is redirect gives you any greater liberty than you had on direct as far as leading is concerned. Objection is sustained." The record is inconsistent with any theory which could justify or excuse the district attorney's misconduct. When the court sustained the objection upon the ground alone that the question was leading, the district attorney did not attempt to meet the objection by changing the form of the question. It is apparent that he not only knew the question with which he closed the examination was improper, but that he did not expect a favorable answer thereto. "Its only purpose was to get before the jury a statement, in the guise of a question, that would prejudice them against appellant." (*People* v. *Wells,* 100 Cal. 459, [34

Pac. 1078] ; *People* v. *Derbert,* 138 Cal. 467, [71 Pac. 564],
and cases there cited.) "The prosecuting attorney may well
be assumed to be a man of fair standing before the jury, and
they may well have thought that he would not have asked the
question unless he could have proved what it intimated."
(Cases, *supra.*)   When the question is coupled with the state-
ment of the district attorney that defendant had placed other
girls in a house of ill-fame in Los Angeles, thereby commit-
ting another crime, there can be no room for doubt, in the
light afforded by the flimsy evidence offered by the prosecu-
tion, accentuated by the ruling of the court, that it was preju-
dicial in the highest degree to defendant's rights.   The
heinous character of the offense charged was one well calcu-
lated to arouse public passion and influence the mind of the
average juror against the accused; indeed, the fact that de-
fendant neglected to furnish the prosecutrix with dinner,
while she was awaiting defendant's return, appears to have
been a material omission affecting the case in the mind of at
least one juror, who asked: "Did he brought your dinner
there since you went there from the morning to 3 o'clock, did
he brought dinner there to you?"   In arriving at their ver-
dict, the jury were no doubt influenced by a belief, based
upon the question which embodied the statement made by the
district attorney, that defendant had placed other girls in
houses of ill-fame, and that it was his intention to so dispose
of the prosecutrix; in other words, that he was engaged in
what is commonly known as the "white slave trade."

Conceding the misconduct and that defendant was preju-
diced thereby, respondent insists that he made no effort, by
invoking the aid of the court, to remove from the minds of the
jurors the prejudicial effect resulting therefrom, and hence,
appellant is not in position to complain thereof.   In support
of this claim, our attention is directed to *People* v. *Shears,* 133
Cal. 159, [65 Pac. 295] , *People* v. *Babcock,* 160 Cal. 537, [117
Pac. 549] , and *People* v. *Ye Foo,* 4 Cal. App. 730, [89 Pac.
450].   None of these cases, however, is in point, for the reason
that it appears in each of them the defendant merely noted
exceptions to statements outside the record, made by the dis-
trict attorney during his argument of the case.   In none of
them was the act of the district attorney assigned as miscon-
duct.   In the case at bar, it appears that defendant not only

objected to the question as being incompetent, irrelevant, immaterial and leading, all of which objections were pertinent, but designated it and the statement as misconduct on the part of the district attorney. Hence, it appears that the attention of the court was, in express terms, directed to the matter and the same assigned and designated as misconduct. True, he did not ask the court to admonish the jury, but it was not necessary to do so. The statement of the court in sustaining the objection upon the sole ground that it was leading, by implication at least, was a ruling that it was not objectionable upon other grounds, and was not misconduct. It appears, therefore, that the misconduct of the district attorney was accompanied by error of the trial court, resulting in the sustaining of the district attorney in the act constituting the misconduct. When the attention of the court was directed to the act of the district attorney and the same assigned as misconduct, it was the duty of the court to reprimand the district attorney, and admonish the jury to disregard the statement of the district attorney and the matters suggested by the question; thus, if possible, destroying the baneful effect thereof. (*People* v. *Bradbury,* 151 Cal. 678, [91 Pac. 497]; *People* v. *Derwae,* 155 Cal. 592, [102 Pac. 466].)

There was no error in the ruling of the court in refusing to give the requested instructions. The substance of the one based upon a like instruction considered in *People* v. *Howard,* 143 Cal. 316, [76 Pac. 1116], had been elsewhere given and it was unnecessary to repeat it. The other two were properly refused, for the reason that they omitted all reference to the element of the offense contained in subdivision 4 of section 261, Penal Code.

In our opinion, the misconduct of the district attorney, coupled with the error of the court, when considered in connection with the character of the evidence, has resulted in a miscarriage of justice. The judgment is, therefore, reversed.

Allen, P. J., concurred.

James, J., concurred in the judgment.