[Crim. No. 423.  First Appellate District.—January 31, 1913.]

## THE PEOPLE, Respondent, v. JAMES LAWLOR, Appellant.

CRIMINAL LAW—PANDERING—PLACING FEMALE IN HOUSE OF PROSTITUTION—SUFFICIENCY OF INFORMATION.—An information charging the defendant with the crime of pandering, in the language of the statute defining the offense, which declares every person guilty of the crime, "who shall procure for a female person a place as inmate . . . of any place in which prostitution is encouraged or allowed in this state," contemplates the commission, either separately, or all together, of the series of acts constituting the offense, and states a public offense.

ID.—FACTS NOT REQUIRED TO BE STATED.—The information need not include, in addition to the facts constituting the offense, all of the acts and conduct, which the statute enumerates and denounces in connection with its definition of the offense, and is not required to state them all conjunctively.

ID.—CONSTRUCTION OF DISJUNCTIVE STATUTE.—The statute in question is in the disjunctive form, and, in general where the statute is in the disjunctive, the effect of the language pertaining exclusively to each offense described, is not affected or modified by the words used solely in describing the other offenses, but the description of each is to be considered as if it stood alone and were read in conjunction with the general words applying to all.

ID.—DISCRETION OF COURT TO REGULATE CONDUCT OF TRIAL—PROTECTION OF WITNESS—REBUKE OF COUNSEL.—The court has discretion to reg-

ulate the conduct of the trial and to protect a witness under cross-examination from apparent menace and threatening, and to rebuke counsel for yelling at the witness.

ID.—REBUKE NOT REVIEWABLE UPON APPEAL.—The rebuke of counsel will not be reviewed or considered prejudicial upon appeal, where no objection was made at the time to the remarks of the court when they were made, upon that ground, and no request was made that the jury be admonished to disregard the same.

ID.—ACCOMPLICE—QUESTION FOR JUDGE.—Whether or not a person in any given case was an accomplice is usually a question of fact arising from the evidence, and ordinarily must be determined by the jury.

ID.—LAW CONCERNING ACCOMPLICES — CORROBORATION — ERROR IN REFUSING REQUESTED INSTRUCTION NOT PREJUDICIAL—JUSTICE NOT MISCARRIED.—While it was error to refuse a requested instruction as to the law requiring the necessary corroboration of an accomplice, before a conviction may be had, yet such error is not prejudicial, and will not justify a reversal of the verdict, where there was no miscarriage of justice, within the meaning of section 4½ of article VI of the constitution, in view of the fact that the evidence, apart from that of the alleged accomplice, fully supports and justifies the verdict.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Chas. S. Peery, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney General, for Respondent.

LENNON, P. J.—This is an appeal from a judgment of final conviction and from an order denying a new trial in a case wherein the defendant was charged with the crime of pandering as defined by a recent enactment of the legislature (Stats. 1911, p. 9), one clause of which provides that "Any person who shall procure for a female person a place as inmate in a house of prostitution or as inmate of any place in which prostitution is encouraged or allowed within this state . . . shall be guilty of a felony, to wit, pandering. . . ."

This clause of the statute constituted the charging part of the information upon which the defendant was convicted. The defendant upon his arraignment interposed a demurrer

to the information based upon all of the statutory grounds, which was disallowed, and it is now insisted, as we understand the contention of counsel for the defendant, that the demurrer should have been sustained upon the ground that the information did not state a public offense in this: that the charging part thereof was not founded upon and did not include all of the acts and conduct which the statute enumerates and denounces in its definition of the crime of pandering. In other words, it is the contention apparently of counsel for the defendant that the doing of any one of the acts enumerated and denounced in the statute will not alone constitute the offense of pandering; and that in order for the information in the present case to state such offense it would have been necessary to allege conjunctively the commission by the defendant of all of the acts and things enumerated in and denounced by the statute.

There is no merit in this contention. Clearly the statute in question contemplates that the commission, either separately or all together, of the series of acts enumerated therein may and will constitute the offense of pandering. As was said in *In the Matter of Roberts,* 157 Cal. 472, [108 Pac. 315], the statute in question "is written in the disjunctive throughout, and the several offenses therein described are apparently as distinct and independent of each other as if they had been enacted in separate sections. In general, when such form of expression is used, the effect of the language pertaining exclusively to each offense described is not affected or modified by the words used solely in describing the other offenses, but the description of each is to be considered as if it stood alone and were read in conjunction with the general words applying to all."

The people elected in the case at bar to charge and prosecute the defendant upon that clause of the statute in question which declares every person guilty of the crime of pandering who "shall procure for a female person a place as inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state." This clause of the statute clearly contemplates and provides for a case entirely distinct from those cases provided for and denounced in the remaining clauses of the statute; and it is

well settled that where, in defining an offense a statute enumerates and denounces a series of acts, the commission of a single enumerated act will constitute the offense. (*People* v. *Frank*, 28 Cal. 507; *People* v. *Leyshon*, 108 Cal. 440, [41 Pac. 480]; *People* v. *Barnnovich*, 16 Cal. App. 427, [117 Pac. 572].)

Counsel for the defendant complains bitterly of a rebuke administered to him by the trial judge during the course of the cross-examination of the complaining witness, and insists that the remarks of the trial judge, although directed to counsel personally, must have operated to the prejudice of the defendant. The incident referred to is shown by the record to be as follows:

"The Court: Don't yell at the witness, Mr. Peery.

"Mr. Peery: That is one of the faults of my voice if your honor please.

"The Court: (to the witness) I don't want you to be afraid of any one here. There isn't anybody in this room that you need be afraid of, and, if necessary, we will have all the police force to protect you. (To counsel for defendant.) And I don't want any nonsense and I don't want you to shout at this witness.

"Mr. Peery: I don't want to shout at her. I have never browbeaten a witness in my life, but I am going to examine this witness.

"The Court: You are going to do it under the court's direction.

"Mr. Peery: I was never guilty of yelling at a witness or of showing disrespect to the court.

"The Court: Your attitude is menacing and threatening and I don't like it.

"Mr. Peery: I never acted otherwise than as a gentleman, and I resent those remarks of the court. I have a reputation as a gentleman at this bar for twenty years. If I have a witness that I think is unwilling and concealing something I have a right to bring it out.

"Mr. McNutt: (Assistant district attorney) You have not got her guessing now, so go on."

It is the undoubted right of a trial court, within the limits of a sound discretion, to control and regulate the conduct of a trial; and it is the duty of such court to promptly and

plainly exercise that right of its own motion for the protection of a witness under examination whenever it appears to the court that the conduct or attitude of counsel toward the witness is "menacing and threatening." In the present case it is apparent from that portion of the record hereinbefore quoted that counsel for the defendant, because of a "fault of his voice" and a commendable zeal in the cause of his client unconsciously provoked the interference and admonition of the trial judge; but whether such provocation was conscious or unconscious its effect upon the witness must have been the same, and therefore the trial judge is not to be censured for acting upon appearance.

While conceding the right of the trial judge to control the conduct of the trial, we do not wish to be understood as commending the propriety of employing the police force of a municipality for the purpose of subduing a single, belligerent lawyer. However warlike a lawyer may be in any given case he may, it seems to us, be speedily subdued and readily restored to reason by other means and methods within the power of the court which would be less spectacular and more in keeping with the dignity of the bench and the orderly administration of justice. "This, however, is a temperamental and ethical matter addressed to the court's own sense of propriety, and its conduct in that respect is not subject to review by the appellate court save to consider whether it has tended to prejudice the defendant." (*People* v. *Szafcsur*, 161 Cal. 636, [119 Pac. 1083].)

We do not consider, and we are unable to conceive, that the jury could possibly construe the remarks of the trial judge as a personal reflection upon the defendant. Evidently the trial judge was directing his remarks solely to counsel for the defendant. That this is so is manifest from the language complained of, and from the further fact that the admonition of the trial judge was resented by counsel for defendant as a personal affront rather than as a suggestion which tended to the injury of the defendant. However that may be, no objection was made at the time that the language and conduct of the trial judge might have operated to the prejudice of the defendant; and it has been repeatedly held that if the trial court commits a supposed or an apparent infraction of the defendant's rights, it is the duty of his counsel to make

immediate objection thereto upon that ground, and at the same time request the court to admonish the jury against being influenced by the irregularity objected to. In the absence of such an objection and request the irregularity complained of will not be considered by this court. (*People* v. *Bishop,* 134 Cal. 682, [66 Pac. 976] ; *People* v. *Amer,* 8 Cal. App. 137, [96 Pac. 401] ; *People* v. *Shears,* 133 Cal. 154, [65 Pac. 295] ; *People* v. *Beaver,* 83 Cal. 419, [23 Pac. 321] ; *People* v. *Crosby,* 17 Cal. App. 518, [120 Pac. 441] ; *People* v. *Bradbury,* 151 Cal. 675, [91 Pac. 497].)

The defendant urges a reversal of the judgment because of the refusal of the trial court to give the jury several requested instructions upon the rule of law concerning accomplices, and the necessity for the corroboration of their testimony before a conviction can be had.

These instructions were requested because of the fact that one Madge Deil, the keeper of the house of prostitution wherein it was alleged and shown the defendant procured a place as inmate for the complaining witness, was called and sworn as a witness for the people. Under a promise of immunity from the prosecution for the same offense for which the defendant was being tried, she testified in effect that Lawlor, the defendant, had conversed with her about "bringing his girl (the complaining witness) from San Jose" for the purpose of putting her to work as a prostitute; that Lawlor had contracted with her (Madge Deil) for a room in her house which, with her knowledge and consent, was to be occupied, and was subsequently occupied, by the complaining witness for the purpose of prostitution.

All persons concerned in the commission of a crime whether they directly commit the act constituting the offense or aid in its commission, are accomplices. (Pen. Code, sec. 31) ; and "Wherever the commission of a crime involves the co-operation of two or more people the guilt of each will be determined by the nature of that co-operation. Whenever the co-operation of the parties is a corrupt co-operation then always those agents are accomplices, even as at common law they were principals." (*People* v. *Coffey,* 161 Cal. 433, [39 L. R. A. (N. S.) 704, 119 Pac. 901].)

Section 1111 of the Penal Code, as it existed when the present case was tried, provides that "a conviction cannot be

had upon the testimony of an accomplice, unless he be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The question as to whether or not a person in any given case is an accomplice is usually a question of fact arising from the evidence, and ordinarily must be determined by the jury (*People* v. *Coffey,* 161 Cal. 433, [39 L. R. A. (N. S.) 704, 119 Pac. 901]). It is the sworn duty of a trial court in charging a jury to state to them, either upon its own motion or at the request of the defendant, all matters of law necessary for their information (Pen. Code, secs. 1093 and 1127); and whether or not Madge Deil was an accomplice of the defendant to the extent that she knowingly aided and abetted the defendant in procuring a place for the complaining witness as an inmate in a house of prostitution was, under all of the circumstances of the present case, a question of fact which should have been submitted for determination to the jury, with proper instructions from the trial court not only defining an accomplice, but declaring as well the mandatory rule of law that the defendant could not be convicted upon the uncorroborated testimony of an accomplice.

The failure of the court to charge, at the request of the defendant, upon any matter of law applicable to the facts of the case, is tantamount to a misdirection of the jury. No objection can be taken to the instructions requested by the defendant upon the subject of accomplices; and for the trial court to refuse them was, in the absence of other instructions upon the same subject, clearly error.

Conceding the error in this behalf the question then arises as to whether or not it was prejudicial error which resulted in rendering the conviction of the defendant a miscarriage of justice within the meaning of the constitutional amendment (sec. 4½ of art. VI) recently adopted by the people.

Although the Penal Code of this state declares that a conviction cannot be had upon the uncorroborated testimony of an accomplice; and while it is clear that this is a matter of law which, when warranted by the evidence in any given case, the trial court is in duty bound to state in its charge to the jury; nevertheless the section of the constitution just men-

tioned distinctly declares that "No judgment shall be set aside or a new trial granted in a criminal case on the ground of misdirection of the jury . . . unless, after an examination of the entire case, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

While this provision of the constitution is far from being self-explanatory of its scope and effect; and although it has never been construed and applied by our supreme court, plainly the purpose of its adoption was to expedite and make certain the administration of justice by rendering of no avail upon appeal to this court errors occurring during the trial of a criminal case, either in the charge of the trial court or as to any matter of pleading or procedure which cannot be fairly said, upon a review of the evidence in the entire case, to have resulted in a miscarriage of justice. In other words, the rule formerly in vogue that prejudice is presumed to have resulted to a defendant from any substantial error or irregularity occurring during the course of a criminal trial, has been effectively abrogated by the constitutional provision under consideration, which, as we read it, declares that where error or irregularity appears in the conduct of a trial it is the duty of the appellate court to examine the evidence upon the whole case, and, if possible, ascertain therefrom whether or not the error or irregularity complained of did in fact operate to the injury of the defendant to the extent that it may be justly said that his conviction was a miscarriage of justice.

In order to comply with the mandate of the constitution there is no escape from the conclusion, it seems to us, that we are called upon and compelled to weigh the evidence upon which the conviction was had, and then decide whether or not the error or irregularity complained of had the effect indicated. If these views be correct then it must follow that where in any given case it appears to the satisfaction of this court from a reading of the evidence adduced upon the whole case that the verdict found by the jury was just, and would have been the same notwithstanding the error or irregularity complained of, a new trial will not be ordered.

Applying these views to the case at bar, we have carefully examined the record before us and find therein evidence

which, apart from the testimony of Madge Deil, fully supports and justifies the verdict; that is to say, the defendant could and should have been convicted of the offense charged against him without the aid of the testimony of Madge Deil; and it is certain, it seems to us, that if the people had rested their case without calling her as a witness the case made against the defendant would nevertheless have been so complete and conclusive that the jury could not have honestly and justly returned a different verdict. In short we are convinced that the defendant would have been convicted even if the requested instructions had been given, and therefore their refusal cannot be said to be a controlling or even a contributing cause of the verdict.

We are not unmindful of the suggestion that under the rule formerly in vogue, and often invoked in the disposition of criminal appeals, it could be said that the jury might have based its verdict solely upon the testimony of Madge Deil, and therefore prejudice would be presumed from the failure of the trial court to instruct the jury upon the subject of accomplices.

The rule of the constitution, however, does not deal in presumptive prejudice, nor permit us to speculate upon the possibilities which may have induced the verdict of the jury. No presumption of prejudice arises from the mere fact of error. On the contrary, it must affirmatively appear to this court that the defendant has been substantially injured by the error complained of. No such showing has been made nor, we take it, can be made under all the evidence in this case.

It follows from what has been said that the misdirection of the jury complained of affords no sufficient warrant to this court for the reversal of the case.

The defendant complains of several rulings of the trial court made in the admission and rejection of evidence. We have carefully examined the record, especially with respect to the rulings called in question; and without specifying each ruling in detail it is sufficient to say that we are of the opinion that no prejudicial error was committed.

The judgment and order are affirmed.

Hall, J., and Murphey, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 31, 1913.