[Crim. No. 475.   First Appellate District.—December 5, 1913.]

## THE PEOPLE, Respondent, v. GEORGE POWERS, Appellant.

CRIMINAL LAW—ROBBERY—HEARSAY EVIDENCE AS TO REPUTATION OF ACCUSED—LETTER FROM CHIEF OF POLICE.—In a prosecution for robbery, it is error to admit in evidence a letter received from a city chief of police by the constable of the township wherein the crime was committed, which tends to show that the accused is a man of bad character, that he has several aliases, that he has been

convicted of grand larceny, that he has been previously arrested upon a charge of highway robbery, and that he is well known to the police of such city, who have his criminal record, photograph, and Bertillon description.

ID.—OBJECTION TO EVIDENCE—WAIVER BY STIPULATION THAT IT BE READ TO JURY.—Where such hearsay evidence is admitted over objection and is about to be handed to the jury, objection to its admission is not waived by counsel for defendant insisting that it be read to the jury and stipulating to that effect, after again objecting to it as evidence.

ID.—HEARSAY EVIDENCE—ERROR IN ADMITTING—WHEN NOT CAUSE FOR REVERSAL.—Error in the admission of such evidence is not cause for a reversal of a judgment of conviction, where the evidence of guilt is positive, direct, and certain, and not contradicted by the defendant himself, who voluntarily took the stand, but testified only to a fact not in dispute.

APPEAL from a judgment of the Superior Court of Contra Costa County and from an order refusing a new trial. J. E. Barber, Judge presiding.

The facts are stated in the opinion of the court.

Everett B. Taylor, and R. L. Boyer, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

RICHARDS, J.—This is an appeal from a judgment of conviction of the defendant upon a charge of robbery and from an order denying his motion for a new trial.

The principal points urged by the appellant upon this appeal turn upon the admission in evidence of certain documentary matter which seriously reflected upon the character and standing of the defendant before the jury, and with respect to which it is claimed that the district attorney was guilty of gross, persistent, and prejudicial misconduct both in his insistence upon the admission of this objectionable matter, and in his subsequent comment upon its effect before the jury.

The record shows that shortly after the robbery was committed and reported to him, one J. J. Fox, a constable of the township wherein the scene of the crime was laid, sent out certain notices and circulars containing a statement of the

commission of the robbery and a description of the suspected offender; and that in response thereto he received from the chief of police of Los Angeles a mailed envelope purporting on its outside to have come from the office of that official, and inclosing a picture and Bertillon description of the defendant, and also a letter from said chief of police which was as follows:

"Constable J. J. Fox, Crockett, Cal.

"Dear Sir: I am in receipt of your letter of the 30th ult., enclosing your circular describing George Powers, whom you want for felony; and I am sending you herewith copy of our picture and Bertillon description of him. He is known to us as George B. Powers, alias George James Howard, alias George Welch, alias John White, alias John Kelly, and is liable to use any name. He was arrested in this city on June 23rd, 1905, on charge of highway robbery; On August 10th was tried, but the jury disagreed, and the district attorney dismissed the case. In November, 1909, he was received at San Quentin from Alameda County for three years for grand larceny. His San Quentin number is 23,937; discharged March 18, 1912. This man is well known to the officers of my department, and I think we will undoubtedly get him for you if he returns to this city.

"Very truly yours,

"C. E. SEBASTIAN,

"Chief of Police."

The Bertillon description accompanying this letter was as follows:

"Institution: City Prison, Los Angeles, Cal.

"Bureau of Identification, Department of Police, Detective service.

"Name: George G. Powers; Registered number, 3412; Color, White; Alias George James Howard, George Welch, John White, John Kelly; arrested June 23, 1905; residence —————————————; Occupation, bricklayer; Descent, American; Crime, robbery. Held———————————P. C. number———————————; Officer, Smith, Benedict and Murphy. Bail———————————. Sentenced——————————. August 10, 1909, jury disagrees. Previous numbers as George Welch, rec'd. Nov. '09, from Alameda Co. three years, S. Q., 23,937 for G. L. Dis. March 18, 1912.

"Marks, scars and moles: 1st. Dagger piercing the flesh left lower arm ext., Pansy and leaf on left lower arm. 2nd. Clasped hands, double heart, red flower and wreath right arm. 3rd. Small scar 1 m. 1 up. rib.''

Counsel for the people insisted, over repeated objections on the part of the defendant, in introducing in evidence this envelope and its inclosures. The reporter's transcript of the trial shows that no tangible explanation or sufficient reason was given at the time why evidence of this highly objectionable and purely hearsay character should be submitted to the jury. Its import was to show that the defendant was a man of bad character; that he had several aliases; that he had been convicted of grand larceny and had served a term in the state prison; that he had previously been arrested in Los Angeles upon a charge of highway robbery, upon his trial for which the jury had disagreed, and that he was well known to the police of that city, who had his criminal record, photograph, and Bertillon description. Had the chief of police of Los Angeles been called as a witness to testify to any of these things it is perfectly apparent that he could not have been legally heard to do so over the defendant's objections; and this being so, why his letter or an unattested record of his office should be deemed admissible passes comprehension.

The attorney-general in his brief upon this appeal does not even attempt to offer any justification of the action of the district attorney in offering and procuring the admission in evidence of the envelope or its inclosures in the first place; but contends that after the admission of this objectionable matter in evidence the defendant expressly waived his objection to it. The state of the record on this point shows that after defendant's counsel had repeatedly but vainly objected to the offer in evidence of the envelope and its inclosures, and when, after being admitted over such objection, they were about to be handed to the jurors for their inspection, the following colloquy occurred:

"Mr. Taylor (defendant's counsel) : We will insist that as long as the matter is introduced in evidence that it be read to the jury, and we will stipulate that it may be read in evidence.

"Mr. Ormsby (district attorney) : I will accept the stipulation of counsel, and read them. The communication or letter reads as follows:

"Mr. Taylor: We are going to object to it if it is allowed to go in evidence on the ground that it forces the defendant to be a witness against himself.

"The Court: The objection is overruled."

The letter and description were then read, whereupon defendant's counsel again renewed his objections to both, stating and arguing the same at length, and assigning the remarks of the district attorney and the introduction of the matter in evidence as prejudicial error.

It would seem quite plain from this state of the record that the only extent to which counsel for the defendant intended his stipulation to go was that of agreeing that the obnoxious matter should be read to the jury instead of being handed to them to inspect and read, and that he must have been so understood by counsel for the prosecution and the court at the time in view of his later objections and the rulings thereon.

The record further shows that at the close of the people's case, the defendant took the witness stand, and was asked by his counsel on direct examination these two questions: "Q. Were you ever convicted of a felony? A. Yes, sir. Q. When did you get out of San Quentin? A. March 18, 1912." The record further discloses that in the information in the case the defendant, in addition to being charged with robbery, was also charged with this prior conviction of felony, and that he had upon his plea admitted the charge of prior conviction.

This being the state of the record upon the entire matter it would seem that whatever error the court may have committed in the admission of incompetent evidence as to the prior conviction of the defendant was cured by his own affirmative testimony; and even if not so cured would not, in view of the defendant's plea, constitute such prejudicial error as to warrant a reversal of the case. But his reasoning cannot be held to apply to the other portion of the letter and inclosure from the chief of police of Los Angeles detailing the defendant's arrest and trial upon another charge of robbery, in which the jury disagreed. The error of the admission of this sort of incompetent evidence against a defendant in this or any case must be held to be a highly prejudicial violation of an essential and long-established rule of criminal evidence intended to safeguard the character and rights of a defendant

on trial for a particular crime. It is to be noted, however, that the incompetent evidence thus admitted had no direct bearing or effect upon the affirmative evidence of the prosecution with respect to the details of the crime. But it is such an error as would, in every case of its occurrence, constrain the appellate court to set aside the judgment and grant a new trial were it not for the counter-compulsion of section 4½ of article VI of the constitution, which requires that "No judgment shall be set aside, or new trial granted in any criminal case on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless, after an examination of the entire cause including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

The examination of the entire cause including the evidence, which the constitution thus compels in this case, shows that the defendant George Powers, alias George Welch, was proceeded against upon an information wherein he was charged with the crime of robbery, alleged to have consisted in the violent, forcible, and felonious taking from one Robert McCasslin of the sum of sixty-five dollars. The information also charged a conviction of a previous felony of like character. The defendant pleaded not guilty to the direct offense charged; but admitted his conviction of the former crime. Upon the trial the said Robert McCasslin testified that he was a messman on an oil steamer lying at the oil dock near Port Costa on the second day of April, 1912; that he left the ship about twenty minutes past ten o'clock on the night of that day and walked along the track to Crockett; that he went to the Arcade saloon, arriving about half past eleven, where he had one drink, and after remaining there a few moments went to the "Idle Hour" saloon near by, where he had four more drinks and where he remained until the closing time at twelve o'clock, when he went outside and stood in front of the saloon talking to two acquaintances named Phillips and Ford. While standing there the defendant, whom he had known several years before under the name of Howard, but who while in the saloon had been presented to him under the name of Kelly, came up and asked for some money to get something to eat and a place to sleep, and that McCasslin took out the

sack which held his money and gave him two dollars. Mc-
Casslin then announced his intention to go back to his ship,
when Kelly "offered to walk a ways with him" on account
of it being a lonely place. Accepting his offer they proceeded
down the track for some distance, when "Kelly suddenly
threw his arm around his neck and struck him in the face;
and when he cried out threatened to kill him, and thrust a gag
in his mouth and threw him violently down on the track,
and struck his face against the rail, and then thrust his hand
into his pocket and took his money; that McCasslin became
unconscious and remained so for some time, during which his
assailant disappeared; upon recovering consciousness Mc-
Casslin went to the Port Costa depot, and told that he had been
held up and robbed by a man named Kelly, whom he then
described and from which description the defendant was later
arrested. The witness positively identified the defendant as
the man whom he had formerly known under the name of
Howard, and who had been presented to him on the night of
the robbery under the name of Kelly; and also positively iden-
tified him as his assailant. The other persons who were with
McCasslin in front of the "Idle Hour" saloon also testified
to the defendant's presence there and that he was the last
person seen in company with McCasslin only a short while
before the robbery. The defendant was also shown to have
disappeared from Crockett immediately after the date of the
crime. The testimony of the witnesses for the people was not
only unshaken upon cross-examination, but was uncontra-
dicted by any evidence educed on the part of the defendant.
The only witness in fact for the defendant was himself; and
the only questions asked of him by his counsel were the two
above set forth. The district attorney undertook to question
him as to his whereabouts on the night of the crime, but was
not permitted to pursue the inquiry. The defendant was not
asked to either affirm or deny the commission of the crime
although he was a voluntary witness in his own behalf.

The jury brought in a verdict of conviction of the defend-
ant of robbery; and the judgment and order denying a new
trial followed in due course.

From the foregoing examination of the entire cause includ-
ing the evidence this court is entirely satisfied that there has
been no miscarriage of justice in this case. It is true that

the error complained of was gross; and in a case wherein the evidence of guilt was less positive, direct, and certain, or was contradicted by that of the defendant himself, would doubtless work a reversal of the judgment. The provision of the constitution, while it constrains this court to affirm the judgment and order denying a new trial in this case, is not to be taken as justifying or in any wise encouraging the commission by trial courts and prosecuting officers of errors of this character in their effort, however laudable, to convict persons whom they believe to be justly accused of crime.

The judgment and order denying a new trial are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 31, 1914, and the following opinion then rendered thereon:

THE COURT.—A careful examination of the record in the light of the petition for rehearing herein assures us that the statement in our opinion of the uncontradicted facts showing the guilt of the defendant, is a fair and sufficiently full resumé of the evidence; and also that in the application of the provisions of section 4½ of article VI of the constitution thereto the opinion of the court is in entire accord with its views expressed in the case of *People* v. *Lawlor*, 21 Cal. App. 63, [131 Pac. 63], and is not out of alignment with the views expressed by Mr. Justice Sloss in the case of *People* v. *O'Bryan*, 165 Cal. 55, [130 Pac. 1042].

In the decision of the case at bar we are not to be understood as holding that in order to have procured a reversal of the case for the error complained of, the defendant would have been compelled to take the witness stand at the trial. The law permits no such compulsion; and this case is not to be taken as pointing to the conclusion that in cases where the erroneously admitted evidence bears directly upon the commission of the specific crime, the defendant must be a witness in his own behalf in order to procure a reversal of the case. Each cause involving the application of section 4½ of article VI of the constitution must be adjudged by its own facts. In the case at bar the incompetent matter admitted in evidence

had no relation to the immediate proofs of the defendant's crime. Had he taken the witness stand to deny the commission of the crime they would have weighed against him as a witness; and for that reason, as well as for the reason that his denial of the commission of the crime would have so changed the face of the record as to leave the proofs against him no longer undisputed, he would have been entitled to a retrial of his case. The defendant was under no compulsion to become a witness in this case. He did so voluntarily, but only to testify to a fact not in dispute and no longer material to the issue. Being a voluntary witness in his own behalf he saw fit to say nothing in contradiction of the otherwise undisputed evidence tendered on behalf of the people; and he cannot now be heard to complain that the uncontradicted and conclusive proofs of the prosecution compel the application of the constitutional provision to his case.

The petition for a rehearing is denied.