[Crim. No. 1349.   First Appellate District, Division Two.—August 3, 1927.]

THE PEOPLE, Respondent, v. ROBERT BRADFORD, Appellant.

Melvin, McClure & Sullivan for Appellant.

U. S. Webb, Attorney-General, and Emery F. Mitchell, Deputy Attorney-General, for Respondent.

NOURSE, J.—The defendants Bradford and Ammerman were jointly tried on an information charging them with a violation of the provisions of section 470 of the Penal Code. The jury returned a verdict finding both defendants guilty as charged and the defendant Bradford alone has appealed upon a typewritten record from the judgment following the verdict and from the order denying his motion for a new trial.

The information charged that on November 27, 1925, the defendants, with the intent to prejudice, damage, and de-

fraud the Anglo & London Paris National Bank and the Owl Drug Company, feloniously, made, altered, forged, and counterfeited a certificate calling for 500 shares of the capital stock of the said Owl Drug Company. This certificate was then pleaded *in haec verba,* and the information charged that the defendants, knowing the certificate to be false and forged, wilfully, feloniously, falsely and with the intent to damage and defraud the two companies named published and passed the said certificate as true and genuine to the said Anglo & London Paris National Bank.

On October 3, 1925, the defendant Bradford visited the office of the Owl Drug Company in the city and county of San Francisco and asked to see a canceled stock certificate, stating that he was interested in the purchase of preferred stock of that corporation in the open market and desired to examine the terms and conditions under which such stock was issued. The young lady in charge of the office handed him a book of unissued certificates, which he retained in his possession for approximately fifteen minutes and then returned it to her. Sometime thereafter two of these blank certificates were found to be missing from the book. On November 12, 1925, the defendant Bradford suggested to one Bergman that they could make about $25,000 through the use of some railroad stock held by a friend of his and which defendant stated had been properly indorsed, but had not been issued by the company. The proposition made by the defendant Bradford to Bergman at that time was that, though these certificates were not legitimate, they could be sold or used as collateral for a loan from some bank or broker's office and that if this were done the money would be divided among Bradford, Bergman, and the holder of the certificates. Bergman communicated this information to one Roberts who advised him to go ahead with the transaction with a Mr. Klinker of the Anglo & London Paris National Bank, and soon thereafter Bergman again called on defendant Bradford, who informed him that the stock he had in mind was stock of the Owl Drug Company and not of a railroad corporation as previously stated. Bergman having expressed a willingness to go through with the deal with the defendant Bradford, the latter proposed that in order to provide an easy method for the negotiation of

the stock he would cause an advertisement to be inserted in the "San Francisco Examiner" seeking a hotel manager, and that when this advertisement appeared Bergman was to call at a designated hotel brokerage office where he would meet George E. Melton, who would express a desire to buy a hotel with money to be raised on the stock. Melton, it appeared, was no other than the defendant, Ammerman, and the purpose of this entire plan relating to the purchase and management of a hotel was to create an atmosphere in order to facilitate Bergman's efforts to secure a loan upon the stock. This meeting was carried out as scheduled and Ammerman there told Bergman that he had some Owl Drug Company stock in his possession which he wished to negotiate in order to enable him to purchase a hotel and that if Bergman could arrange this loan he would be assured the position of manager. A few days later the two defendants and Bergman met again in Bradford's apartment. Bergman informed Bradford that he had been to the bank and felt sure that he would be able to secure a loan of $25,000 on the stock. Bradford then informed him that the certificate was in Ammerman's possession and that it had not been indorsed by Melton whose name appeared upon the face of the certificate as the owner. Bradford refused to allow the certificate to be indorsed in his apartment and instructed defendant Ammerman to take it to the Bank of Italy and indorse it there. When this certificate had been thus indorsed by Ammerman in the name of Melton it was delivered by him to Bergman, who took it to the bank, where he delivered it to Mr. Klinker, telling him that it was the stock which he had previously talked to him about. Mr. Klinker examined the certificate and told Bergman that they would have a note made out for a $25,000 loan on the stock and that he should bring Mr. Melton in to sign the note. Such a note was prepared and handed to Bergman, who took it across the street to where Ammerman was waiting for him and told him it was necessary in order to secure the loan that he, Ammerman, should sign the note. At that time defendant Bradford approached Bergman and Ammerman and asked if everything was proceeding smoothly. While these three were engaged in conversation police officers approached and arrested them.

■ On this appeal it is argued that the information fails to charge a public offense, because it does not appear therefrom that the certificate of stock pleaded in the information was indorsed upon the reverse side. The argument is that if this certificate was not indorsed then the act of defendants in forging the names of the officers of the corporation and in attempting to dispose of the certificate was an idle act, because it appears from the face of the certificate that it was transferable only when surrendered properly indorsed. In support of the point the appellant cites *People* v. *Thornburgh*, 4 Cal. App. 38 [87 Pac. 234], where it was held that an indictment charging the forging and utterance of a check payable to the maker without charging the forgery of the indorsement thereof is insufficient. Other cases of the same purport are cited, but they are all far wide of the mark. Here the information charged Bradford and Ammerman with forging and uttering a certificate of stock issued in the name of one Melton, but it does not appear on the face of the pleading that Melton was a fictitious person. There was no demurrer to the information and no objection to the introduction of the evidence which disclosed that Melton was in fact Ammerman, the man who actually forged the signatures of the officers of the corporation, and there was no objection to the receipt in evidence of the original stock certificate which disclosed the indorsement on the reverse side in the name of Melton. Thus, if there was any defect in the pleading in this respect which could have been reached by special demurrer, that course should have been followed, but the defect, if any, is one which could not under any possible view have prejudiced the appellant in the conduct of the trial.

■ It is argued that no public offense was committed by the appellant because the feigned accomplice Bergman and his confederates, Roberts, Klinker, and Mullins, originated the intent to commit the offense and consented to all the acts proved. The complete and effective answer to the point is that the whole plan of securing the stock certificate, forging the signatures of the officers of the corporation thereto and using it for purposes of sale or security for a loan was conceived by the appellant and his confederate Ammerman and that what was done by Bergman, Roberts,

Klinker, and Mullins was done for the purpose of apprehending Bradford and his confederate so that this forged certificate could be secured and the means of perpetrating a fraud upon some innocent person could be taken from those charged with the forgery. The evidence of appellant's activities in the conception and prosecution of the conspiracy is uncontradicted, neither he nor his confederate having taken the stand in their behalf, while the theory upon which appellant's counsel tendered this defense was fully protected by the trial judge in his instructions to the jury. This instruction really states the rule of law involved in a case of this kind, and it is unnecessary to discuss the cases cited by the appellant where the intent to commit the crime originated in the minds of the party who was endeavoring to trap the one charged with the offense. In this connection the trial court instructed the jury as follows: "You are instructed that where the criminal intent originates in the mind of the entrapping person and the accused is lured into the commission of the offense charged in order to prosecute him therefor no conviction may be had."

It is argued that the verdict of the jury is contrary to the evidence because it does not appear that the certificate of stock was forged in the city and county of San Francisco, or that the appellant aided or abetted in the forgery of it. Appellant's co-defendant, Ammerman, admitted in his confession that the signatures of the officers of the Owl Drug Company were appended to the certificate in his room in San Francisco and that in filling in the blanks on the face of the certificates he used a typewriter which was in this same room. There is no direct testimony as to which one of the parties actually signed the names of these officials, but all the inferences go unmistakably to show that this was done by Ammerman at the special instance and direction of this appellant. This evidence of the acts done in San Francisco fully covers the question of venue.

It is argued that the trial judge erred in striking the words appearing in parentheses in the following instruction: "You are hereby further instructed that the words 'utter' and 'publish,' in the law of forgery, are synonymous, for the meaning of both is 'to declare or assert, directly or indirectly, by words or actions,' that the forged

instrument is genuine. To constitute the offense of uttering, it is necessary that some overt act be committed toward uttering. (The mere act of delivering a forged instrument to an agent or co-conspirator, with the design that the agent or co-conspirator should utter or pass it, is insufficient.)'' The omitted words would have served no other purpose than to have confused the jury and would have nullified the correct statement of the law covering the law of uttering and publishing a forged instrument.

It is argued that the trial court erred in admitting the deposition of the witness Bergman because the deposition was taken at his preliminary examination upon a complaint charging forgery of the certificate with intent to defraud the Anglo & London Paris Bank, whereas in fact it was an attempt to defraud the Owl Drug Company as well as the Anglo Bank. From this it is argued that Bergman's deposition was not taken in a preliminary examination upon a charge which was heard before the committing magistrate. The argument is based upon the theory that there is a variance between the complaint and the information. But there is no variance. The information merely pleaded additional facts supplementing the main charge of forgery.

It is also suggested that the trial court erred in admitting this deposition because the prosecution failed to show due diligence to find the witness Bergman in this state. The determination of whether due diligence was shown in this regard was imposed upon the trial judge and from our examination of the record we cannot say that any error was committed in this respect.

The motion for a new trial was based upon the affidavit of Ammerman in which he stated that the certificate was forged by him in the state of Nevada, that he alone procured the two blank certificates from the office of the Owl Drug Company, and that the appellant had no knowledge of the forgery or of the plan to pass the certificate. Prior to the trial this affiant had made two separate confessions, or statements, to the police which were contradictory and which were in conflict with the statements in his affidavit. Though he did not take the stand as a witness, he was shown at the trial to be unworthy of credence. It is now argued that this testimony outlined

in the affidavit, having been discovered by appellant after the close of the trial, was sufficient to require a new trial in his behalf. Evidence was offered at the trial to show that the signatures were attached to the certificate under appellant's direction in the county of San Francisco, that he alone had called at the office of the Owl Drug Company and had secured the blank certificates, and that he had planned the entire transaction. He made no effort to controvert any of this testimony which he must have anticipated would be brought out by the state. The appellant has not shown the diligence necessary to justify an order granting a new trial.

The judgment and order are affirmed.

Sturtevant, J., and Koford, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 29, 1927.