[Crim. No. 885.   Fourth Dist.   May 6, 1955.]

THE PEOPLE, Respondent, v. LAWRENCE C. VALDEZ, Appellant.

Annette La·Rue for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant was convicted by a jury of the crime of violating section 11500 of the Health and Safety Code (possession of heroin). He was committed to state's prison.

The facts show that on March 26, 1954, two police officers went to defendant's apartment in Fresno, knocked at the door, and entered after defendant opened it, showed their identification, and searched the two-room apartment consisting of a bedroom and kitchen which were occupied by defendant, his pregnant wife, and four children. A package was found on a shelf in the kitchen containing seven little bindles of heroin. The officers asked defendant about it and at first he denied any knowledge of it or its contents. After further questioning, he said: ''Well, it's mine. I bought it from some fellow in Chinatown . . . It contains heroin.'' He was asked if he used heroin and defendant answered: ''I sniff it.'' The contents of the bindles were found to contain, in the aggregate, seven grains of diacetyl morphine, commonly known as heroin. Defendant admitted he had no prescription for its possession or use.

On the witness stand defendant admitted having the bindles and that he told the officers he knew they contained heroin, but then claimed his statements to them at the time of arrest were false; that in fact he found the package some 30 days prior thereto, behind a loose panel in the wall in the public bathroom which was down and across the hall from his apartment, and which was used by other occupants of the apartment house; that after he discovered it he just left it there; that sometime later one Peemy came to his apartment in reference to a ride to Huron, a near-by town, and told defendant he had just been released from jail; that he refused to give him the ride; that a few weeks later this same person was coming down the stairs in the apartment house, stopped defendant, and inquired if a certain young lady by the name of ''Angie'' lived there; that he told him he would inquire about it; that he, defendant, went to the bathroom, obtained the package, took it to his apartment door, told Peemy of his previous find, and asked him if he knew what it was; that Peemy said he did; that it was

dope; that he was a user of it; and that he called it "medicine"; that he told Peemy it was not his and he could not give him any of it; that after Peemy left he returned the package to its place in the bathroom and had nothing to do with it thereafter; that on March 26, about 9:30 a. m. Peemy returned to his apartment, aroused him from his sleep, and insisted on having some of that "medicine"; that defendant told him he had thrown it away; that he would not have given him any, anyhow; that after some further insistence that he was sick and needed some of that "medicine" that defendant showed him on a previous occasion, and after he made some promises about giving defendant some presents, tires, etc (which promises defendant did not believe), he went to the bathroom, down the hall, to see if the package was still there; that he found it was, and returned it to his apartment, and to get rid of him he gave him one bindle from the package and temporarily placed the other bindles in his (defendant's) pocket; that Peemy then left the apartment and about 15 minutes later the officers knocked at the door and he (defendant) then removed the package from his pocket and placed the seven bindles on the kitchen shelf and allowed the officers to come in and search the place; that he told a different story to the officers at that time because he was afraid they were going to take his wife to jail to search her, and because she was in this country as an "illegal alien."

On cross-examination of the officers it was brought out by counsel for defendant that Peemy was an undercover agent acting for the arresting officers; that on a previous occasion Peemy was sent to defendant's apartment and he purchased one bindle of heroin for $7.00; that on the day of arrest he was endeavoring to obtain some more, under the officers' instructions; that when Peemy left defendant's apartment that morning the officers were in the vicinity and knew of his visitation; that they entered about 15 minutes after Peemy left and found the package as indicated. Peemy was not a witness at the trial and there was no testimony to contradict the story of defendant about the package being in the bathroom when the undercover agent asked defendant for some of its contents.

As we construe the argument of counsel for defendant on appeal, it is her contention that if defendant was a possessor of the narcotics on the two instances prior to March 26, as related by defendant, this possession was cured by abandonment

and therefore defendant thereafter did not have possession of it on March 26, prior to the visitation of the police informant, citing *People* v. *Noland,* 61 Cal.App.2d 364 [143 P.2d 86], wherein it is said: "A person has 'possession' of a chattel who has physical control with the intent to exercise such control, or, having had such physical control, has not *abandoned* it and no other person has obtained possession." (Italics ours; and 1 Cal.Jur.2d p. 2, § 2.) It is therefore contended that if defendant was in possession of it on March 26th, it was only because he was induced by Peemy to take possession of it again through the trickery and entrapment of Peemy and the officers.

Of course the jury was not bound to believe the testimony of defendant that the package was in the bathroom at any time. It might well have believed that the package remained in his apartment during the entire period. Although there may be considerable doubt about defendant's story, the factual question should have been submitted to the jury under proper instructions. The trial court refused to give two of defendant's proffered instructions on the question of entrapment offered in the general language of CALJIC No. 851, to the effect that the law will not tolerate a person, particularly a law-enforcement officer, to generate in the mind of another person who is innocent of any criminal purpose, the original intent to commit a crime thus entrapping such person into the commission of a crime which he would not have committed or even contemplated but for such inducement.

Apparently, the prosecution offered an instruction on the same subject, which was also refused in view of the court's refusal to give defendant's proffered instructions.

Defendant admitted temporary possession of the package. His sole defense, at the trial and in the argument to the jury, was that he was entrapped into taking possession of the heroin on March 26th, after he had abandoned. such prior possession on a previous date. The legal principles involved in *People* v. *Gallagher,* 107 Cal.App. 425 [290 P. 504], are quite similar to the instant case. There the informer and drug addict, a known peddler of drugs, approached defendant and asked him if he wanted to buy a drug, and quoted the price. The defendant was told by the informer that he did not have it with him but suggested that defendant play around for about a half hour and come back, and that in front of an apartment house which the informer pointed out the defendant would find the drug in a can lying alongside the curb. Defendant fol-

lowed these directions and when he drove up in front of the apartment house by the curb he picked up the can with the drug in it and was arrested by the officers who had secured the informer to sell the drug to the defendant. The informer did not testify at the trial but on cross-examination of the officers these facts were brought out. The defendant was charged with illegal possession of the morphine. At the trial the court refused to give an instruction on the defense of entrapment. On appeal from the conviction it was said that it was doubtless the law, as respondent contends, that the trial court should refuse to give an instruction as to any theory which is not supported by substantial evidence, but it is also well settled that a defendant is entitled to an instruction based on the theory of his defense, providing such instruction correctly states the law, and the defense is supported by substantial evidence, citing cases. It was held that the defendant's testimony, if true, when considered along with the circumstances revealed on cross-examination of the officers, was legally sufficient to justify a reasonable inference that he was the victim of an entrapment and that being so he was clearly entitled to the benefit of an instruction upon that doctrine. It quoted *People* v. *Lawlor*, 21 Cal.App. 63 [131 P. 63], to the effect that "the failure of the court to charge, at the request of the defendant, upon any matter of law applicable to the facts of the case is tantamount to a misdirection of the jury." ▮ In that case it was the contention of defendant that the possession by him of the drug was brought about solely through the instrumentalities of the state's agent and those working under him, for the very purpose of causing his arrest. It was emphasized there that it was not to be understood that the court on appeal held that appellant's version of the transaction was true but that this was a question to be determined in the trial court and, if believed by the jury, it was legally sufficient to entitle him to the benefits of the doctrine of entrapment, and consequently the jury should have been instructed accordingly. We are unable to distinguish the legal principles there involved from those in the instant case if the jury should believe the defendant's testimony. At least the defendant was entitled to have the question of his claimed entrapment submitted to the jury. (See also *In re Moore*, 70 Cal.App. 483 [233 P. 805]; *People* v. *Lanzit*, 70 Cal.App. 498 [233 P. 816]; *People* v. *Lopez*, 118 Cal.App.2d 235 [257 P.2d 670]; 14 Cal.Jur.2d p. 449, § 205; *People* v. *Bradford*, 84 Cal.App. 707 [258 P. 660]; *People* v. *Makovsky*,

3 Cal.2d 366 [44 P.2d 536]; *People* v. *Roberts,* 40 Cal.2d 483 [254 P.2d 501].) *People* v. *Braddock,* 41 Cal.2d 794 [264 P.2d 521], did not involve the question of the refusal of the trial court to give an instruction on the subject matter but whether or not the evidence showed entrapment as a matter of law.

The other claimed errors of the trial court in the reception of certain testimony may not become involved on a new trial.

Judgment and order reversed and a new trial ordered.

Barnard, P. J., and Mussell, J., concurred.