[Crim. No. 832.  Second Appellate District, Division One.—February 14, 1922.]

THE PEOPLE, Respondent, v. W. WIGNALL, Appellant.

[1] CRIMINAL LAW—CONSPIRACY—EVIDENCE.—In this prosecution for the crime of criminal conspiracy under the provisions of section 182 of the Penal Code, and especially subdivision 4 thereof, the evidence was sufficient to sustain the judgment of conviction.

[2] ID. — SUFFICIENCY OF JUDGMENT — SPECIFICATION OF CRIME — APPEAL.—Where the minutes of the court in such a prosecution sufficiently identify the case and, although the recitals are not as complete as section 1207 of the Penal Code, directs that they shall be, at the same time the judgment is explicit in that it indicates the maximum term for which the imprisonment of the defendant should be enforced, and that maximum is in accord with the extent of the punishment authorized for the crime charged, the defendant cannot successfully contend on appeal that such judgment is void, in that it does not sufficiently specify the crime for which defendant was convicted.

[3] ID.—DEFECTIVE COMMITMENT — CORRECTION BY AMENDMENT — HABEAS CORPUS.—If a commitment defective in form has been made, a new and corrected one might be issued to conform with the judgment, and the presence of such an amended or new commitment in the hands of the custodian officer would be an answer to an application for discharge upon *habeas corpus.*

[4] ID.—AMENDMENT OF JUDGMENT AND COMMITMENT—APPEAL.—Matters of defect in the form or substance of commitment process cannot be reviewed on appeal; and the appellate court cannot take notice of what purports to be an amended judgment and commitment made after the entry of the judgment appealed from, and after notice of appeal had been given.

APPEAL from a judgment of the Superior Court of Orange County. Z. B. West, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles P. Huey for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

JAMES, J.—Defendant was informed against for the crime of criminal conspiracy under the provisions of section

182 of the Penal Code, as amended by Stats. 1919, p. 170, and especially subdivision 4 thereof. It was charged that he conspired with three other persons named in the information to defraud the First National Bank of Yorba Linda of the sum of $827.30. The information in its statement of facts constituting the offense further alleged that the conspirators deposited two certain checks, drawn upon a San Francisco bank for the aggregate sum of $2,250, with the former bank, and that they represented that the checks were good, and upon such representations obtained from said bank $300 in cash and a cashier's draft or check for the sum of $527.30. It was charged that the checks first mentioned were worthless, which the conspirators at the time well knew. Of the four men concerned in the transaction it appears that the defendant alone was apprehended, tried, and convicted. His appeal purports to be from the judgment and from an order denying his motion for a new trial.

[1] As to the sufficiency of the evidence to sustain the judgment, no question can well be made. It was shown that four men, the defendant being one of them, appeared at Yorba Linda, and, pretending to be interested in oil lands, expressed their desire to purchase an option for a lease on certain lands then controlled by the president of the bank mentioned. This defendant was represented as a geologist, and another of the four men as an attorney who was passing upon the regularity of the transaction. One of the remaining men took the part of the chauffeur. The land in question was viewed and this defendant reported to his confreres that it looked "all right." The price to be paid for the option was $500. One of the men, called "Franklin," produced the two checks, drawn upon San Francisco banks, representing that he had the money there. He went with the president of the Yorba Linda bank to the latter institution, deposited the two checks, and in turn drew a check for $500, which was used in an escrow made in connection with the option transaction. He also was allowed to draw the sum of $300 in cash against the purported deposit, and also asked for and received a draft or cashier's check for the sum of $527.30, which at his request was issued payable to one De Witt. Without loss of time the defendant here, who had been known to the banker at Yorba Linda as "Sharky," appeared in a Los Angeles bank seeking to cash the cashier's

check, representing himself to be De Witt. The bank refused to honor the draft without evidence of identification, and for that reason defendant was unable to get the money. He was next heard from in the city of Long Beach. A jeweler of that city testified that a man whom he had known by the name of ''Fields''—evidently the ''Franklin'' referred to herein—appeared at his store and stated that he had lost a watch which he had purchased of the jeweler at a time prior thereto, and desired to buy a new one. He selected a watch and presented in payment therefor the cashier's check for $527.30, and requested that the price be deducted therefrom, and that he receive the remainder in cash, which would have amounted to something over $400. The cashier's check at that time bore on the back the name of ''De Witt,'' and ''Fields'' (or ''Franklin'') stated to the jeweler that he knew De Witt and knew that the signature was all right. The jeweler stated that he had not the amount of money in the store, but would go to the bank and get it. His real intent was to ascertain as to whether the cashier's check was good. He went to a bank in Long Beach, which in turn communicated by telephone with the Yorba Linda bank and received from that institution advice to hold the check and arrest the man. The jeweler returned to his store and found that ''Fields'' had gone, the latter having indicated to a clerk that he was going out to get something to eat. Shortly thereafter a messenger boy arrived at the store with a note directing the delivery of the watch and money to the bearer. A police officer had been secured in the meantime, and he gave direction to the messenger boy to take the package to the person who had sent him there, while the officer followed a short distance behind. The messenger boy testified that when he received the note from the man he had been told by him not to disclose his whereabouts. When the boy arrived at the place where the man had told him to report, that individual, observing the proximity of the officer, motioned to the boy to follow him and then proceeded in the direction of the beach. As the boy got close to him he told the boy not to give him the package, that someone was following him. This being the situation, the officer took the parcel from the boy and proceeded to arrest the man, who was fully identified as being this defendant. As to whether he was the

same person who appeared in the jeweler's store is not made certain by the record, but that is not material. Defendant's connection with the entire fraudulent scheme was fully established, and from the circumstances shown no reasonable mind could be left in any doubt at all as to the conspiracy having existed as charged in the information. The evidence introduced was competent to establish the essential facts.

[2] Appellant complains that the judgment as pronounced by the court was not only defective, but void, in that it did not sufficiently specify the crime for which defendant had been convicted. Attention is called to the fact that under the provisions of section 182 the punishment authorized to be adjudged upon conviction may be different dependent upon the subdivision under which the charge is framed. If the defendant here had been charged with the crime of defrauding the bank, rather than a conspiracy so to defraud, he would have been punishable by imprisonment of from one to ten years. Section 182 in its concluding provisions declares that where the conspiracy is to commit any felony the person convicted is punishable in the same manner and to the same extent "as in this code provided for the punishment of the commission of the said felony or act." Under date of July 27, 1921, a record of the minutes of the court shows that the defendant was in court with his counsel and that a motion for a new trial was denied, also an application for release on probation. The following recitals then appear: "The defendant was asked if he had any legal reason why judgment should not be pronounced at this time. He stated 'He had none.' It is the judgment of this court that you be confined in the state's prison at San Quentin for a term of not less than one nor more than ten years. Defendant makes motion for an appeal in open court. The sheriff was directed to carry out the court's order." The minutes of the court sufficiently identified the case, and, while the recitals were perhaps not as complete as section 1207 of the Penal Code directs that they shall be, at the same time the judgment was explicit in that it indicated the maximum term for which the imprisonment of the defendant should be enforced, and that maximum was in accord with the extent of the punishment authorized for the crime charged. (Pen. Code, secs. 489, 532; *People* v. *Kelly,* 120 Cal. 271 [52 Pac. 587].)

Section 1213 of the Penal Code provides that authority for the execution of a judgment in a criminal case is shown by a certified copy of the entry made upon the minutes. We find no requirement in the code that the form of the commitment issued shall appear upon the minutes or docket of the court. In this record there is exhibited what purports to be a commitment issued upon the judgment, and which commitment, instead of following the minute order, directs that the defendant be imprisoned "for the term provided by law." We think that the commitment, as it purports to be set forth, has no place in the record and cannot be looked to for any purpose here. [3] If, in fact, a commitment defective in form had been made, a new and corrected one might have been issued to conform with the judgment, and the presence of such an amended or new commitment in the hands of the custodian officer would be an answer to an application for discharge upon *habeas corpus.* [4] At any rate, matters of defect in the form or substance of commitment process cannot be reviewed on appeal. For like reason we are not permitted to take notice of what purports to be an amended judgment and commitment made after the entry of the judgment herein referred to, and after notice of appeal had been given. Upon the record as presented we find no error entitling appellant to a new trial.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 14, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 14, 1922.

All the Justices concurred, except Sloane, J., and Shurtleff, J., who were absent.

Richards, J., *pro tem.,* was acting for Waste, J., who was absent.