[Crim. No. 3200. Second Appellate District, Division One.—July 7, 1939.]

THE PEOPLE, Respondent, v. GEORGE S. ELLIS et al., Defendants; ALBERT L. EDMAN, Appellant.

Philip Shacknove for Appellant.

Earl Warren, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County appellant was charged jointly with one George S. Ellis with four counts of burglary, while the fifth count accused both defendants of the crime of assault with a deadly weapon. As to appellant, the information further charged two prior felony convictions and penal servitude therefor, all of which were admitted. So far as defendant Ellis was concerned, the case was disposed of by a plea of guilty, while as to appellant the cause proceeded to trial before the court following appropriate waiver of a jury, the trial resulting in a decision by the court finding appellant guilty of the charge contained in each count of the information. Defendant appeals from the judgment.

Epitomized, the facts presented in the evidence were that a series of burglaries were perpetrated in Los Angeles County through illegal entry into a warehouse and three markets, from which certain merchandise was stolen. While the burglary charged in count I was in progress the perpetrators thereof came upon the night watchman, upon whom they made a vicious assault, rendering him unconscious and effecting their escape. This assault forms the basis of count V of the information. Appellant and his codefendant, Ellis, were apprehended about 3 o'clock on the morning of September 8,

1938, by the police at Compton in the county of Los Angeles. At that time both defendants were in an automobile and one of the officers found in the automobile an iron pinchbar, a flashlight, a five-shot U. S. revolver containing four shells, a Remington automatic, packages of cigarettes, tobacco, gum, and a bottle partially filled with whiskey, all identified as being the exact property or similar in every way to the merchandise stolen in the burglaries. Upon searching appellant, the officers found upon his person two keys which fitted the apartment occupied by a lady friend of appellant. Upon a search of this apartment the officers found therein a quantity of cigarettes, hams, cheese and whiskey, also of the same kind and character as the merchandise stolen in the burglaries. Appellant denied participation in any of the burglaries or in the assault committed upon the watchman, explaining his presence in the automobile at the time of his arrest with the statement that his codefendant, Ellis, had taken him in the automobile from a liquor establishment and was driving him around in an effort to "sober him up". With reference to the apartment keys found upon his person, appellant stated that he had received them from his lady friend the evening before, and he disclaimed any knowledge of the illgotten goods sequestered in either the automobile or the apartment to which the keys belonged.

The two grounds for reversal upon which appellant depends are thus stated by his counsel: (1) The verdict is contrary to and unsupported by the evidence and is contrary to law; (2) the court erred in admitting into evidence the confession of appellant.

 In connection with the points thus presented, appellant suggests that, leaving out of consideration the purported confession, the evidence was wholly circumstantial, and he insists that all the circumstances were of such nature that they do not in any way tend to show any connection on the part of appellant with either the assault upon the night watchman or with the four burglaries. We cannot agree with appellant's contention in this regard. From the facts epitomized by us herein and which in much greater detail are contained in the record, we are led to the conclusion that there is considerable incriminatory evidence tending to connect appellant with the commission of the crimes, if the court chose not to believe the explanation offered by appellant in relation thereto.

We come now to a consideration of appellant's contention that the confession obtained from him was erroneously admitted in evidence by the court. As herein narrated, appellant was arrested early on the morning of September 8, 1938. The arrest was made by the officers without a warrant. The confession was obtained from appellant on the evening of September 9th. The latter testified that from the time on September 8th when he was delivered into the custody of Los Angeles city police officers and the evening of the day following when he signed the written confession, he was constantly interviewed and questioned, during which inquisition he was brutally beaten and kicked. When asked at the trial as to whether he signed the confession only because "you were afraid you would be further beaten up", appellant testified, "Yes, I would not have been not only in fear of it, I know I would have been. I knew I had to sign it." It is at once apparent that if the testimony of appellant describing the treatment to which he was subjected during the interval elapsing between his arrest and the signing of the confession stood uncontradicted as the only evidence on the subject, it would have been gross error to admit in evidence a confession so obtained. But his testimony is contradicted by that of the officers, who testified that they did not use threats, promises or mistreatment of any kind in obtaining the confession. The claim of the officers with reference to the manner in which the confession was obtained may be crystallized in the following testimony given by one of the Los Angeles city policemen:

"A. I was questioning this defendant about where he had disposed of these stolen cigarettes and he didn't want to tell me. Q. What did he say? A. He said he didn't want to involve other people in it, and he said he either wanted to stand pat or go all the way, and he said that he couldn't make up his mind. He wanted to talk to this girl in Lincoln Heights. He said he was in love with her and whatever she told him to do he would do. Q. This was the same girl, Juanita Harris, that was in this apartment where the keys fitted the door? A. Yes, sir. . . . Q. (By Mr. Stahlman, Deputy District Attorney): Was there any further conversation on that occasion, officer, with this defendant? A. I heard this girl tell this defendant to tell the truth about it. Mr. Appel (defendant's counsel): I move that that be stricken out. The Court: Motion granted. Q. By Mr. Stahlman: You were present?

A. Yes, I was present. Q. The girl was there? A. Yes, sir.
Q. The defendant was there? A. Yes, sir. Q. Did he make
any reply to that statement? A. Well, he made some reply,
but I don't know just what it was. I didn't hear it. Q.
What was the next thing you said to him or he said to you?
A. I called him then and we left the room at Lincoln Heights
and I asked this defendant how he felt about it. He said 'I
am going to tell the truth about it.' Q. Was there a further
conversation after that? A. Yes. We left and went back
to central station. Q. Who was present at central station?
A. Deputy Sheriff Claxton, myself and this defendant. . . .
Q. By Mr. Stahlman: Were you present thereafter at the
time the statement taken from Ellis was shown to this defend-
ant? A. Yes, sir, I was. Q. Where was that? A. That
was in the city jail. Q. Who was present? A. Deputy Sher-
iff Claxton and myself, and special officer Howrey. I forget
who the other officer was. Q. At that time did you have in
your possession a copy of this statement which was previously
given by Ellis? A. I Did. Q. Was that statement read by
this defendant or read to him at that time? A. It was read
by this defendant. Q. In other words, you turned it over
to him and saw him reading it? A. Yes, sir. Q. Did you
have any conversation with him pertaining to the statement?
A. I did. Q. What was said? A. I asked him to read it
and make any corrections that should be made, and if it was
the truth to sign it. Q. By the Court: What did he say?
A. He didn't say anything then, but he read it and made a
correction on it, and then signed it after he had read it."

▮ Whether a confession is free and voluntary is a pre-
liminary question addressed to the trial court, and a con-
siderable measure of discretion must be allowed that court
in determining it. (*People* v. *Connelly,* 195 Cal. 584, 598
[234 Pac. 374]; *People* v. *Castello,* 194 Cal. 595, 599 [229
Pac. 855]; *People* v. *Siemsen,* 153 Cal. 387, 394 [95 Pac.
863]; *People* v. *Wilson,* 79 Cal. App. 709, 712, 713 [250 Pac.
879].) In *People* v. *Siemsen, supra,* it is said that the "ad-
missibility of such evidence so largely depends upon the spe-
cial circumstances connected with the confession, that it is
difficult if not impossible, to formulate a rule that will com-
prehend all cases. As the question is necessarily addressed
in the first instance to the (trial) judge, and since his discre-
tion must be controlled by all the attendant circumstances,

the courts have wisely forborne to mark with absolute precision the limits of admission and exclusion.'' It has also been held that the mere fact that the confession was made to a police officer or other officer of the law while the accused was under arrest, does not necessarily render the confession involuntary and inadmissible. (*People* v. *Hoge,* 25 Cal. App. 456, 458 [143 Pac. 1072]; *People* v. *Quan Gim Gow,* 23 Cal. App. 507, 512 [138 Pac. 918].)

■ Appellant further urges the involuntary character of the confession by reason of the alleged violation of section 849 of the Penal Code, which provides that when a person is arrested as was this appellant, without a warrant, he must be taken, without unnecessary delay, before the nearest and most accessible magistrate in the county in which the arrest is made and a complaint stating the charges against such person filed with such magistrate. It is the law that a reviewing court cannot say that the trial court committed error in admitting a confession of guilt unless such error appears as a matter of law from the record presented. Appellant contends that the record shows he was arrested on September 8th, but ''was not arraigned before a magistrate for preliminary examination until September 28'', some twenty days after his arrest without a warrant. While a violation of the law requiring that a person arrested without a warrant must be taken promptly before a magistrate would be a factor in determining whether such illegal process constituted external means of pressure by which the free will of the defendant has been overcome, the record before us is not as contended for by appellant in that regard. A careful search thereof by us reveals no reference therein either to the date of appellant's arraignment before a magistrate or the date of his preliminary examination, while it does apprise us of the fact that a confession was obtained in less than thirty-six hours after appellant's arrest. In view of the fact that the trial court is clothed with considerable discretion in determining whether or not the confession was free and voluntary, where the evidence, as here, is conflicting on the subject, it must be assumed that the testimony concerning defendant's admissions was properly admitted. (*People* v. *Castello, supra*; *People* v. *Shaffer,* 81 Cal. App. 752, 756, 757 [254 Pac. 666]; *People* v. *Tugwell,* 28 Cal. App. 348, 356 [152 Pac. 740].)

We are not prepared to say that the court below abused its discretion when it admitted the appellant's confession in evidence. There is ample evidence in the record, some of which is outlined above, warranting the conclusion that it was not induced by threats, force, promises, inducements, or illegal process, but was freely and voluntarily made. Containing as it does a full and complete admission of appellant's guilt as to all the offenses contained in the information, the decision finding him guilty and the judgment pronounced thereon find abundant support in the evidence.

For the foregoing reasons, the judgment from which this appeal is taken is affirmed.

York, P. J., and Doran, J., concurred.