[Crim. No. 3642. Second Dist., Div. Three. Feb. 26, 1943.]

THE PEOPLE, Respondent, v. RUFUS HOPKINS, Appellant.

Frederic H. Vercoe, Public Defender, and William B. Neeley, Deputy Public Defender, for Appellant.

Earl Warren, Attorney General, and R. S. McLaughlin, Deputy Attorney General, for Respondent.

DESMOND, P. J.—Defendant appeals from two judgments of conviction of second degree burglary and the order of the trial court denying his motion for a new trial. He was convicted by a jury of burglarizing the store of Maurice Ball Furriers, 500 West Seventh Street, Los Angeles, on or about January 16, 1942, and the store of Pelta Fur Company, 437 West Seventh Street, on or about February 22, 1942.

He was arrested on Sunday, May 10, 1942, at approximately 6:00 o'clock a.m. in front of the Best Drug Store, located at 737 West Seventh Street, three blocks west of the Pelta Fur Company establishment. The officer who arrested him testified that as he was driving south on Flower Street he noticed the defendant standing in front of the window of the Best Drug Store and saw him throw a paper-covered brick through the window; that defendant, when he threw the brick, "placed his back against the window and he stuck his finger—he had a cut on his left-hand finger and powdered glass all over his shoulders"; that he then asked the defendant why he had been breaking windows, to which the defendant made no reply; that he took him to the police station and that the defendant there admitted that he had broken the window and, in fact, had broken several windows. The officer also stated that at the time of the arrest the defendant had a folded shopping bag under his arm; that the defendant was booked and the next day was questioned by investigating officers. These officers testified that the defendant told them that the only windows he had smashed were along Seventh Street, after which they took him for a tour along that thoroughfare; that defendant, on the trip, pointed out the store of the Maurice Ball Furriers and the Pelta Fur Company as places where he had broken windows, and had stolen, from the first establishment a gray fur coat, which Mr. Ball later testified at the trial was worth approximately $80, and from the Pelta Fur Company a Chinese

mink coat, which the proprietor, Mr. DeGorter, testified was worth wholesale about $380. The defendant told the officers, according to their testimony, verified by the defendant when on the stand, that he had sold to a man named Avery the first mentioned coat for $30 or $35, and the other for $50. It also appeared from the testimony that the defendant was taken to Maurice Ball at his store and confessed to him the theft and his disposition of the stolen gray fur coat, and at the other store confessed to Mr. DeGorter the theft and sale of the mink coat. There was testimony that each of these burglaries was committed between closing time on Saturday night and early Sunday morning, although the Ball burglary was charged in the information to have been committed on or about January 16, 1942, which was Friday. The evidence showed that entry to the Maurice Ball Furriers was made by someone throwing a missile, variously described by different witnesses as a rock or a brick, through the glass window, making a hole large enough for the garment to be removed; that entrance to the Pelta Fur Company store was gained by throwing a paper-wrapped brick through the display window. The defendant, upon his trial, admitted that he had told the officers that he broke all three windows, at Ball's, DeGorter's and at the Best Drug Store, but stated that none of his confessions were free and voluntary and that all were false and induced by threats and violence. The officers, on the other hand, denied that any force, violence or threats were employed in their investigation. The jury, judging from their verdicts, did not believe the defendant's story, either of mistreatment at the hands of the officers, or of the claimed falsity of his confessions to them and to the fur merchants. This is not at all surprising to one who reads the record.

The appellant claims that error arose when the court, over his objection, admitted testimony respecting offenses other than those charged against him in the information. As a second point, the defendant urges that the court erred in refusing to give an instruction which he offered concerning the continuing effect of force and violence on successive admissions or confessions of a defendant.

 The appellant feels aggrieved because the officer who arrested him on the morning of Sunday, May 10th, was permitted to testify to the circumstances surrounding his arrest, including the act of throwing the missile in the window of the Best Drug Store, an offense upon which he was booked imme-

diately thereafter at the Central Jail on suspicion of burglary. He was never prosecuted for that offense and now relies upon the familiar rule that evidence of other crimes is not admissible to prove the offense charged against a defendant. But there are certain exceptions to that rule and one arises, to quote from appellant's brief, "when the evidence of the other offense is intermingled with the charged crime." To determine whether or not the evidence in this case concerning the breaking of the window at the Best Drug Store is in any way connected with the Ball and DeGorter burglaries, we note the following: At the very time when this defendant was booked he admitted, according to Officer Wilton, "before Lt. Mitchell and myself that he had broken the window and had broken several windows." He was then held for investigating detectives who, next day, proceeded to question him concerning windows which he had broken, including the drug store window and the other windows. As a result of their investigation, he confessed that he had not only broken the window of the drug store but "other windows," including those of Ball and DeGorter, all of them being on Seventh Street within a few blocks of each other. The defendant's convictions rest upon his confessions and in investigating the question of his culpability, the detectives naturally started with his first confession made in the presence of Lt. Mitchell and the arresting Officer Wilton who, in his testimony, said "we booked him on the advice of Lt. Mitchell and held him for the investigating detectives." We think a sufficiently tangible chain of connection exists between his confession of the burglaries and his admissions in the booking office in the Central Jail on the preceding day and that, therefore, the testimony of the occurrence which led to the first confession and ultimately to the others was properly admitted.

As to the second point on appeal, we understand that defendant wishes us to consider the circumstances surrounding two classes of confessions: first, confessions which he testified he made to the investigating officers as a result of beatings inflicted upon him with fists in the basement of the City Hall and by means of punches in the stomach and blows with a blackjack while he was on his way into Los Angeles in an automobile from the western part of the city; second, the confessions which he made shortly thereafter to Mr. Ball and Mr. DeGorter where there was no evidence of violence or threats being employed. It seems to be the theory of the de-

fendant that the jury may have believed his story that he confessed to the officers under threats and violence, but hearing no evidence of violence employed or threats made in the presence of DeGorter and Ball, they may have concluded that those confessions were free and voluntary; whereas, if they had been properly instructed the jurors would have recognized the fact that the admissions to Ball and DeGorter, like the confessions to the police officers, were induced by unlawful means. The defendant, therefore, requested that four separate instructions be given on the subject of confessions, including the following: "If you believe from the evidence that force and violence was inflicted upon the defendant by the police officers, and that this force and/or violence resulted in, or produced, or caused a first confession on the part of the defendant, then I instruct you that in the absence of a clear showing that the influence and effect of such force and violence had been entirely removed from the mind of the defendant, before he made a second confession if any, that the second confession, if any, is subject to the same rule, as to its not being free and voluntary; that is to say, that it is to be assumed that the second confession also, was induced by the same force and violence that caused the earlier confession, if you find that such force and violence was used by the police against the defendant." Defendant feels that the foregoing instruction was warranted under the authority of *People* v. *Castello,* (1924) 194 Cal. 595, 600 [229 P. 855], *People* v. *Reed,* (1924) 68 Cal.App. 19 [228 P. 361], and *People* v. *Loper,* 159 Cal. 6 [112 P. 720, Ann.Cas.1912B, 1193]. We have read each of these cases but find that not one presents facts similar to the instant case.

Referring to the record, we find that the defendant stated "Well, they told me they wanted me to tell the manager of the store just like I told them. So they took me to the store. Quite naturally I told them; of course I was scared they would take me back and beat me again." In view of this direct statement by the defendant that he made his confession to Ball and DeGorter under the influence of fear of a beating, we feel that the subject of confessions was satisfactorily covered in another instruction requested by the defendant which the trial court gave to the jury, reading as follows: "While under the law it is the province and duty of the court to determine in the first instance the admissibility in evidence of the confessions of the defendants; nevertheless the jury under the law of this State have also the duty to determine whether said

confessions were obtained or made under a hope of reward, immunity from punishment, or by promises, duress, violence, force, or fraud and whether they were freely and voluntarily made. If from all the evidence relating to said confessions you are of the opinion that said confessions were obtained or made under a hope of reward, immunity from punishment, or were obtained by promises, duress, violence, force or fraud and were not freely and voluntarily made, you have a right to disregard them in arriving at your verdicts in this case. Or if you have a reasonable doubt in regard thereto, you should resolve such doubt in favor of the defendants.''

■ If we are mistaken in our reasoning that the trial court was justified in admitting the testimony of Officer Wilton concerning the arrest of May 10th, and defendant's confession then that he had broken the drug store window and ''other windows,'' we still do not feel, having read the entire record, that the defendant suffered any harm by reason of that ruling, and the same is true as to the failure of the court to give more than one instruction on the subject of confessions. It does not appear to us that there was in this case any miscarriage of justice. Therefore, under section 4½, article VI, Constitution of California, the verdicts should stand. (*People v. Stefini*, (1931) 114 Cal.App. 530 [300 P. 112] ; *People v. Lawlor*, (1913) 21 Cal.App. 63, 69 [131 P. 63].) Accordingly the judgment and order are affirmed.

Wood (Parker), J., concurred.

SHAW, J. pro tem.—I concur. I believe the admission of the testimony complained of can be justified on the ground that it tends to prove a plan or system of defendant in the commission of like crimes, under the rule of *People v. King*, (1939) 13 Cal.2d 521, 527-528 [90 P.2d 291] ; *People v. Thorne*, (1938) 10 Cal.2d 705, 708 [76 P.2d 491] ; *People v. James*, (1940) 40 Cal.App.2d 740, 745 [105 P.2d 947].