[Crim. No. 2254. First Dist., Div. One. June 24, 1943.]

THE PEOPLE, Respondent, v. EDWARD ERNEST BIER, Appellant.

314

Edward Ernest Bier, in pro. per., for Appellant.

Robert W. Kenny, Attorney General, David K. Lener, Deputy Attorney General, Ralph E. Hoyt, District Attorney, and Folger Emerson, Deputy District Attorney, for Respondent.

WARD, J.—An appeal from the judgment and from the order denying a motion for a new trial. The information alleged an assault with intent to commit rape; also a prior conviction of rape in pursuance of which conviction defendant had served a term in a penal institution. A jury was waived and the case heard by the court.

The complainant, married, and the mother of a nineteen months old baby, testified that on the morning of the date alleged in the information defendant drove an automobile to the rear of her home and "asked me if my husband were at home, and I said no, that he was at work, and then he told me that he had been talking with my husband about the old car we had in the yard and that he said that he had it for sale. He was driving by and he thought he would like to see it. I said 'You go ahead and take a look at it.' So he went up to the car just a few feet away. I walked over to the car with him. . . . I walked back to the house and he came back and was standing there, and I said 'Why don't you go down where my husband works and ask him about the car, if there was some question about it?' He said, well, he was going into Oakland and he didn't want to stop that morning, and he said 'Let me have a piece of paper and pencil and I will write him a note.' I said 'Wait just a minute' and I went into the house. . . . I opened the door and slammed the door behind me. I went into the kitchen

and then into the dining room to get the paper and pencil. I didn't hear him come in. Just as I turned around I heard him. He was about six feet behind me. . . . I turned half way around. I said 'Here is your paper and pencil.' He said 'I don't want the paper and pencil.' He grabbed me around the waist with both arms. I immediately resisted. I told him to let go of me. He grabbed me around the neck with the crook of his arm and then he grabbed me with both hands on my throat and started to choke me. . . . We struggled from the dining room across the living room floor and I tried to scream. I did scream. Every time I made any noise he held his hand over my mouth and hit me and he threatened to knock me out if I didn't stop screaming. The front door was open and I told the dog to bark. I also told him [defendant] I was menstruating. He didn't seem to hear anything I said. He kept threatening to knock me completely out if I didn't stop hollering. . . . I scratched him on the face at that time. . . . He was trying to drag me into the bedroom. The door was open and I got away from him just slightly and was trying to get out of the front door. He reached over and let me go for just a second and slammed the front door and then I got away from him just far enough to go back in the dining room, near the archway between the living room and dining room, and I had both my arms around his waist and scratched him in the back. . . . He had his hand against my chin, forcing my head back. I had to let go, because he hit me on the jaw and then I was knocked on to the chesterfield, with my face down, my stomach down on the chesterfield. He had his stomach to my back. . . . The last time he hit me it stunned me slightly. He asked me if I was going to yell any more. If I did he would knock me out again. I told him I would be quiet and then he had to catch his breath a second or two. At that time I told him I was menstruating and he said 'You are?' And my clothes of course were disarranged and my shorts were torn and my underclothes were torn and the sanitary belt and pad I had on was loose and he said 'Let me see,' and he looked at the pad then. . . . Then he got up and he and I fought. We were standing right before the big mirror in the living room and he seemed pretty disturbed. . . . I looked at the mirror. I said 'You almost killed me.' He put his hands to his face and said 'Well, you scratched

me.' I tried to get him to go. I told him if he would just leave the house I would not call anyone, I would not do anything. I asked him just to get out of the house. He was going to go and then he grabbed me a second time and put his arms around my waist. I told him over again I was menstruating and then I told him I had to have a drink of water, but the thing was I wanted to get out in the kitchen and he insisted I go and get a drink while he watched me. He was watching the outside door. So I got a drink. He made me stand in the middle of the house between the living room and dining room, so he could leave, and finally when he came back about three times to see that I was still standing there, when he finally went I heard the back door slam. I knew he was in his car. All I had to do was to look out of the dining room window and I had a clear view of the license number which I took and wrote down.''

Complainant reported the occurrence immediately to the sheriff, and defendant was arrested several hours thereafter at his home. An automobile of the identical type and registration number reported by the complainant was found on the premises.

On the trial the defense was an alibi, the establishment of which was of course passed upon by the court. On appeal it is contended that ''the evidence does not show that there was an intent to commit rape''; that ''The evidence adduced at the trial shows that the offense of Battery was committed.''

█ It should be noted that certain inconsistencies on relatively minor matters appear in the cross-examination of the complainant, and that these inconsistencies are emphasized by reference to the transcript of the preliminary examination. Excerpts from the testimony are selected with extreme care and it is argued therefrom that because defendant did not attempt to kiss complainant and did not ask her to engage in sexual intercouse, etc., there was no intent to commit rape. The testimony of the complainant is not incredible. On the contrary, her story and the surrounding circumstances, must have conclusively convinced the trial court that the assault was with intent to rape and not for the purpose of committing mayhem, robbery, grand theft or even the infamous crime against nature (Pen. Code, sec. 220.) The contention that the assault occurred with intent to commit the last mentioned offense seems to be presented seriously.

This contention may be fathered by appellant, now in a penal institution, who appeared on appeal in *propria persona,* but hardly by the "inmate attorney" who, the record discloses, assisted in the preparation of appellant's briefs. The above evidence has been quoted because of the various contentions. The facts are similar to those in *People* v. *Moore,* 155 Cal. 237 [100 P. 688]; *People* v. *Welsh,* 7 Cal.2d 209 [60 P.2d 124]; *People* v. *Parker,* 74 Cal.App. 540 [241 P. 401], and the evidence amply supports the judgment rendered by the trial court, which should not be disturbed by a reviewing court. (*People* v. *Johnson,* 46 Cal.App.2d 63 [115 P.2d 605] *People* v. *Tedesco,* 1 Cal.2d 211 [34 P.2d 467]; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Stangler,* 18 Cal.2d 688 [117 P.2d 321].)

It is contended that the judgment is erroneous since the charge in the information is designated as assault with intent to commit rape, a violation of section 220 of the Penal Code, and the reporter's transcript reads as follows: "In the case of the *People* v. *Edward Ernest Bier,* it is the decision of the Court that the defendant is guilty of the offense charged in the information, towit, Violation of Section 220 of the Penal Code—attempt to commit rape." The minute records of the court show that "The Court in the above entitled cause, finds the Defendant guilty of the crime of felony, to-wit; a violation of Section 220 Penal Code, as charged in the information." The "Decision of the Court," over the signature of the trial judge is set forth in the exact language of the minutes. In the arraignment for judgment the offense in several instances is referred to as an "assault with intent to commit rape, a violation of section 220 of the Penal Code." The commitment refers to "the crime of felony, towit: a violation of section 220 of the Penal Code (assault with intent to commit rape)" and thereafter as "a violation of section 220 of the Penal Code, as charged in the information." The use of the words in the reporter's transcript is undoubtedly error. The true designation of the offense is set forth in the minutes of the commitment, etc. Under the circumstances the formal decision and the commitment must be deemed controlling upon the theory that in the absence of proof to the contrary it should be assumed the clerk's duty was properly performed. (*People* v. *Sander,* 59 Cal.App. 82 [209 P. 1027]; *People* v. *Riccardi,* 50 Cal.App. 427 [195 P. 448]; *People* v. *Litchman,* 17 Cal.App.2d 252 [61 P.2d 1229].)

Appellant was sentenced to the state prison for the term prescribed by law. (Pen. Code, sec. 1168.) He states that under the circumstances he will be deemed a two-term offender without having been adjudged such by the trial court, and urges that the prior conviction should have been dismissed or it should have been adjudged that he had suffered a prior conviction. Reliance is placed upon *People* v. *Schneider*, 36 Cal.App.2d 292 [98 P.2d 215]. In that case the prior conviction was ignored. In the present case appellant concedes that he is in fact guilty of a prior offense, and that upon arraignment he admitted he had suffered a prior conviction as charged in the information. The commitment herein recites the date, the place, the particular felony and the penal institution of his incarceration. We are not here concerned with the habitual criminal act (Pen. Code, sec. 644), but rather with a proper notification to the prison authorities of the criminal history of appellant upon which his term and place of confinement should be fixed in accordance with the law. (Pen. Code, secs. 3024, 3045, 3023.) If alleged servitude is denied, it should be proved, but if it is admitted a recital of the admitted facts is sufficient. (*People* v. *Schneider, supra; In re McConnell*, 5 Cal.2d 436 [55 P.2d 205].)

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.