[Crim. No. 625. Fourth Dist. Feb. 15, 1944.]

THE PEOPLE, Respondent, v. ROBERT A. SOURISSEAU et al., Appellants.

Joseph Seymour for Appellants.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

GRIFFIN, J.—On July 10, 1943, two separate informations were filed against defendants charging them with the violation of section 261 of the Penal Code (rape), alleging that on June 26, 1943, each did wilfully and unlawfully and with force and violence have and accomplish an act of sexual intercourse with the prosecutrix. The defendants were duly arraigned thereon. Thompson, in person, and Sourisseau, through his counsel, entered a plea of not guilty thereto. The minutes of the court in reference to the arraignment of Sourisseau show that on that date, July 12, 1943, ''counsel stipulate

that the *case* of the *People of the State* v. *Thompson,* No. 36616, may be consolidated with the within cause for trial.'' (Emphasis ours.) Defendant Thompson then consented to such ''consolidation of said cases for trial'' and upon motion of the district attorney the trial court consolidated the cases for trial and each was set for August 5, 1943. On July 14, 1943, the district attorney moved to file an amended information as to each defendant. The amended informations charged that each did, on the same date, accomplish an act of sexual intercourse against the will of the prosecutrix and that then and there she was prevented from resisting by means of threats of great and immediate bodily harm, accompanied by apparent power of execution. Each defendant was re-arraigned on the amended information, entered a plea of not guilty, and the trial was set for August 5, 1943. The minutes of July 14, 1943, show that ''Upon stipulation of counsel, court orders that the within case and the case of *People* v. *Lee Thompson,* No. 36616, be . . . consolidated for trial.'' No objection was made to this order by either party. On August 5, 1943, defendants appeared for trial. At that time counsel for Sourisseau, at the request of defendant Thompson, was appointed by the court to represent him also. They proceeded to trial. The trial court inquired if the cases had been consolidated. The district attorney announced that they had been. Without any objection as to the cases being consolidated, all parties proceeded to empanel the jury.

The reporter's transcript shows that the court clerk inadvertently read the original informations to the jury, at which time the district attorney requested the clerk to read the amended informations and counsel for defendants requested the court to instruct the jury to ''ignore what has been read by the clerk.'' The court agreed and ordered the clerk to read the amended informations which the clerk did. In a later instruction the court directed the jury to disregard any evidence ordered stricken. No further objection was made nor motion to strike imposed. The district attorney then, in an opening statement, announced that the charge against defendants was rape under section 261 of the Penal Code and that one of the elements of the charge was that the act of sexual intercourse was against the will of the prosecutrix and ''was done under threats of great bodily harm.'' The district attorney subsequently stipulated, in the presence of

the jury, that the people were not "charging here force and violence" and that no force or violence was used. After trial of the issues as thus presented and after the giving of instructions which included one in the following language: "You are instructed that section 261 of the Penal Code . . . reads in part as follows: 'Rape is an act of sexual intercourse, accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: . . . (4) Where she is prevented from resisting by threats of great and immediate bodily harm accompanied by apparent power of execution . . .,' " the jury returned separate verdicts as follows: "We, the jury . . . find the defendant . . . guilty of a violation of section 261 of the Penal Code as charged in the information." No objection was then made by counsel for defendants to the form of the verdicts as thus returned. August 9, 1943, was fixed as the time for pronouncing sentence. Counsel for defendants then moved for a new trial and arrest of judgment in each case, which motions were continued to August 16, 1943, at which time defendants argued at length and each motion was denied. The trial judge arraigned each defendant for judgment, over objections of counsel, and orally announced that both defendants be confined in the state prison for the term prescribed by law. Oral notice of appeal was announced. On the following day, August 17, 1943, the defendants, for some reason not apparent from the record, except as may appear from the reporter's transcript, were returned into court "for re-arraignment and re-sentence" and "for the purpose of correcting any error as to form, which may have occurred at the time of pronouncing judgment yesterday." Over objection, they were re-arraigned and sentence was again pronounced as before. Both oral and written notice of appeal from each purported judgment and each order followed. The trial court then, on August 17, 1943, issued two separate commitments, one for each defendant, each commitment reciting that the defendant therein named had been duly found guilty of a felony, "violation of section 261 of the Penal Code," and commiting him to state's prison, granted a five-day stay of execution, and remanded defendants to the custody of the sheriff.

The facts surrounding the alleged charge as established by the evidence and which support the verdict of the jury may be thus epitomized: The prosecutrix, Rosalie Boles, testified that she was 19 years old and had been married to Sergeant

Boles for about thirteen months prior to the trial; that her husband was stationed near Hemet with an antiaircraft outfit; that before June 26, 1943, she lived in Sage, located near Hemet, with a Mr. and Mrs. Jones; that on Saturday evening about 9 p. m., she took some of the Jones family and the cook to Hemet to see a show in the Jones pick-up truck; that after leaving them she was to call for them again at 11:30; that at that time she did not know just where her husband was stationed but knew it was west of town; that she proceeded out his way and stopped at a cafe; that a soldier (Thompson) and a civilian (Sourisseau) came up to the truck and said: "Excuse me; I thought you were someone else"; that she asked the soldier if he knew her husband; that he told her he did and would show her where to find him and that they were going right down that way as soon as they drank the beer they purchased in the cafe; that all three went into the cafe and the two men drank beer while she drank a bottle of pop; that they were in the cafe about fifteen minutes and while there the two men went back into another room and were whispering; that the three started out the door to go to her husband's camp; that the civilian drove and she was seated between the two men; that they drove past the army camp and into a field where there was an old shack belonging to a relative of one of the boys; that she then became suspicious and asked them to take her back; that they continued on and she started screaming and begging them to take her back; that they arrived at the shack and the civilian got out and told her what he was there for; that the civilian said: "Get out or do I knock you in the head"; that she refused and the civilian clenched his hands and came at her throat with his hands apart saying: "Get out or do I choke you"; that the civilian threatened to strike her but the soldier only threatened her in words; that she got out and they took her into the cabin onto a cot and stripped her of her clothing; that each accomplished an act of sexual intercourse and the soldier was "talking about keeping me there all night." She then testified that she did not strike them nor kick them because she was "too scared"; that they started back in the truck as before, and both of the men were whispering to each other; that they went down past the army camp and came to the sentry; that they got out and talked to him; that while the men were talking to the sentry she

sneaked back to get in the truck and drive away but the civilian saw her and ran over and grabbed the steering wheel; that she ran back to the sentry and told him the defendants stole her car and drove her into the hills but that she did not go into details as to what happened; that the sentry called the M.P.'s; that she thought the defendants jumped into the truck and that the civilian drove away and later had an accident with it; that she remained with the sentry until a woman came along in a station wagon and took her back to town; that the following Monday she was able to see her husband and told him she was in some trouble and asked him to get a pass; that she saw him that evening and told him what had happened; that on Wednesday they reported the incident to the authorities and defendants were subsequently arrested. The sentry corroborated her story as to what happened at the sentry station and further testified that Mrs. Boles told him that the two ''boys raped her'' and related other statements made to him by her concerning the trip to the shack and how she met the boys. A motion was then made to strike all of those statements. It was denied. The trial court committed error in not striking the detailed portion of the complaint which was made to the sentry by Mrs. Boles, which was made in the absence of the defendants. We will later discuss this point. The sentry then testified that the civilian drove away in the pick-up truck but that the soldier left in another direction and went to bed.

Sergeant Boles testified that he saw his wife around 10 a. m. on June 20th; that she commenced crying and said she had a wreck with the truck and implored him to get a pass; that he had difficulty in getting such a pass until 6 p. m.; that that evening his wife told him everything. The trial court erroneously, over objections, allowed the husband to relate the factual details of that conversation, which related facts were about the same as she stated on the witness stand. Counsel for defendants moved to strike the conversation. The trial court denied the motion and adjourned court for the day. The following morning the trial judge, of his own motion, told the jury about the motion to strike the entire testimony of Boles and Sergeant Stapp, and the court's ruling thereon, and then instructed the jurors to disregard their testimony ''pertaining to the details of the crime related to them by the prosecutrix,'' but ''you may consider any complaints made to the witness of the commission of the offense.''

Thereafter, counsel moved for a mistrial, which motion was denied.

A deputy sheriff testified that he talked to defendant Thompson on July 2, 1943, in the presence of a stenographer, and that defendant's statements were free and voluntary. On cross-examination he stated that he told defendant that "it was our belief it would be better for him" if he would talk and tell what happened; that it was his opinion that "honesty was the best policy" and to tell the truth would probably be better for him. He then related the conversation with defendant Thompson as to where he met the prosecutrix and about their departure in the truck. He testified that Thompson said the "victim did not go willingly"; that she refused to get out of the car at the shack; that Sourisseau asked her if she wanted "it the hard way or the easy way" and asked her to get out of the car "in quite a threatening voice"; that he said: "Will you take it the easy way, or will I have to bash your head in," and made other threatening remarks. The balance of the statement agreed generally with the story as related by the prosecutrix. A motion was made to strike the claimed statement on the ground that it was obtained under threats, menace, and inducements held out to the defendant, which motion was denied. A conversation was had by the same officer with defendant Sourisseau. He testified that he did not use any threats, menace or duress to cause him to give a statement, but that he may have possibly said in substance or inferred that it would be better for him to talk. He further testified that he read from the Penal Code the penalty for the offense and stated that the exact number of years was in the hands of the prison board. The officer, over objections, testified that Sourisseau related the details of the meeting with the prosecutrix, which details were about the same as told by her; that he said: "The reason the act of sexual intercourse took place was because of the threats he made her"; that she submitted on account of the impossibility of assistance at that location and the threatening voice he used; that Sourisseau said he wanted to tell the truth and "get it off his chest;" that he broke down, wept, and wanted to enter a plea of guilty at that time. A motion to strike the above admissions was denied.

Over objections, the stenographer read the questions propounded and answers given by each defendant as reported

by her, which were in effect factually the same as related by the deputy sheriff. The People then rested.

Defendant Thompson took the witness stand. His counsel propounded a question to him and asked him if he heard read his statement as reported by the stenographer. He replied that he did and that he made those statements because they were "the truth and facts" and that Sourisseau was present when he made them. Defendant Sourisseau then testified. He admitted the act of sexual intercourse, admitted making the statements as read by the stenographer, but claimed he made them because the officer in charge told him that it would be better to tell the story just as the girl had told it; that he was nervous and worried; that his reported statement was not true; that the officers made no promises, but he got the "impression" from their statements that if he told the truth (according to the girl's story) it would be better for him. On the witness stand defendants did not testify to any facts contrary to the story told by the prosecutrix respecting the acts of sexual intercourse at the shack. Sourisseau admitted a former conviction of the crime of robbery. The defense rested. After argument, verdicts of guilty were returned and proceedings were had as above related.

■ The first point to be considered by this court and which is raised by defendants, is counsel's claim that the two cases were improperly consolidated for trial. It is argued that even though there may have been a consent to a consolidation of the cases for trial on the original informations, such consent did not apply to the amended informations because the filing of the amended informations constituted a new action as to each defendant. The original stipulation and consent to consolidation applied to a consolidation of the *cases* numbers 36615 and 36616. The filing of amended informations did not make new or different cases against defendants as distinguished from the original informations filed against them. At any rate, the actions and conduct of both defendants were such that there was no doubt that the intention of the parties was that the cases against them should be tried together, with one jury, and under the same evidence. No objection was made as to the procedure followed until that point was raised for the first time on appeal. There is no merit to the first contention. (*People* v. *Fontana,* 138 Cal.App. 379 [32 P.2d 160]; *People* v. *Shepherd,* 14 Cal.App.2d 513 [58 P.2d 970].)

The second point presented involves the charges set forth in the original informations and those stated in the amended informations. The original informations apparently charged an act of rape under section 261, subdivision 3 of the Penal Code (by means of force and violence). The amended informations charged the same crime under subdivision 4 thereof (prevented from resisting by threats of great and immediate bodily harm). The clerk did erroneously read the original informations to the jury but the court, through counsel's suggestion, ordered the jury to ignore what had been read and the clerk then read the amended informations and the defendants' pleas thereto, upon which issues the defendants went to trial. We see no prejudicial error in that procedure. However, the verdicts as returned, do specify that the defendants were found "guilty of violation of section 261 of the Penal Code as charged in the *information*." To comply strictly with the pleadings as thus presented, the verdicts should have read "*amended information*." No objection was made to the verdicts as to their form when received. We do not believe defendants were misled as to the intention of the jury to find the defendants guilty as charged in the amended informations. The case of *People* v. *Flohr*, 30 Cal.App.2d 576 [86 P.2d 862], is factually similar on this point. In disposing of the question the court there said: "The form of verdict is to be regarded as immaterial, provided the intention to convict of the crime charged is unmistakably expressed," citing cases. (See, also, *People* v. *DuFault*, 1 Cal.App.2d 105 [36 P.2d 196].)

The third point presented involves the actions of the trial court in arraigning the two defendants for judgment on August 16, 1943, and then on the following day rearraigning them and again pronouncing the same judgment and issuing a commitment on that day. It is defendants' argument that a separate judgment was imposed on each defendant on August 16th, and a separate judgment was again imposed upon them on August 17th, and if the judgment of August 16th was valid the judgment of August 17th was void and that a commitment issued on a void judgment is also void and of no effect, citing *In re Wilson*, 202 Cal. 341 [260 P. 542]; *People* v. *Mess*, 65 Cal. 174 [3 P. 670]. In the Wilson case there were two judgments and a commitment issued on each judgment. It was there held that the first judgment

and commitment thereon was valid and the second judgment and commitment were invalid. We must conclude in the present case that the first judgment pronounced on August 16th was valid. Therefore, the so-called second judgment was ineffectual. Defendants have appealed from the first judgments as well as the purported judgments of August 17th, and from the orders denying them new trials. But one commitment, as to each defendant, was issued in the present case. It merely recites that defendants were found guilty; that they be punished by imprisonment in the state prison for the term prescribed by law, and that the sheriff deliver them to the warden. "Done in Open Court on August 17, 1943." The clerk certified each to be a true copy of the judgment duly made and entered in the minutes of the actions. The commitments do not state, nor in any way designate or specify on which one of the purported judgments they were issued. While it might be argued that from a statement of the clerk in one of the subsequent minute entries it may be reasonably construed that the commitments above described were issued upon the purported judgments of August 17, 1943, there is nothing on the face of the commitments that show they were not issued on the judgments of August 16, 1943.

The defendants have heretofore endeavored to test the validity of those commitments by applications to the Supreme Court on writs of habeas corpus. A stay of execution was granted by the trial court pending the determination of that issue. The writs were denied. ■ There is no irregularity in the commitments that would affect the validity of the judgments from which defendants have appealed, nor is there any defect therein as would give rise to a valid ground for a new trial. ■ A commitment is not a judicial order made after judgment from which an appeal may be taken. (Sec. 1237, Pen. Code; *People* v. *Flannelly,* 128 Cal. 83 [60 P. 670].) Under sections 1213-1216, Penal Code, the commitment is only a certified copy of the judgment as rendered and pronounced. (*Matter of Robbins,* 27 Cal.App. 677 [151 P. 14]; *In re Woo Hah,* 34 Cal.App. 35 [166 P. 851].) ■ Under the provisions of those sections it becomes the clerk's duty, when a judgment of imprisonment is regularly entered, unless otherwise directed by the court, to make forthwith a certified copy of the judgment, certified by the judge and clerk of the court, and deliver it to the proper officer. In the absence of proof to the contrary, it is assumed the clerk's

duty was properly performed. (*People* v. *Bier,* 59 Cal.App.2d 313 [138 P.2d 738].) ▆ Such commitment need not necessarily be made or dated on the same date that judgment is pronounced. (*In re Nakanishi,* 19 Cal.App. 552 [126 P. 508].)

In *People* v. *Wignall,* 56 Cal.App. 423 [205 P. 881], it was held that matters of defect in the form or substance of commitment process cannot be reviewed on appeal and that if in fact a commitment defective in form had been made, a new and corrected one might be issued to conform with the judgment, and the presence of such an amended or new commitment in the hands of the custodian officer would be an answer to an application for discharge on habeas corpus.

We therefore must conclude from the recited facts that no valid ground exists for reversing the judgments or ordering new trials upon the grounds presented under counsel's third point.

▆ The fourth point involves the erroneous admission of the evidence where the two witnesses were permitted, over objection, to relate the details of the complaint made to them by the prosecutrix. The trial court erred in admitting that evidence but later ordered the jury to disregard it. The original ruling was erroneous, and the delay in ordering the jury to disregard the testimony erroneously admitted no doubt was unfortunate, but it has been repeatedly held that the admission of improper evidence is harmless if it is subsequently stricken out and the jury is told to disregard it, and where it is so instructed it will be presumed it obeyed the instruction. (*People* v. *Prather,* 134 Cal. 436 [66 P. 589, 863]; 8 Cal.Jur., p. 618, sec. 599, and cases cited.) ▆ The facts related in the stricken evidence were fully covered by testimony of other witnesses. No miscarriage of justice resulted. (*People* v. *O'Donnell,* 11 Cal.2d 666 [81 P.2d 939]; art. VI, sec. 4½, Const.) ▆ Fifth, the defendants argue that the trial court erred in refusing to grant their motions for mistrial based upon the grounds set forth in point 4. For the reasons there expressed, the trial court properly refused to grant their motion.

The sixth point involves the admissibility of the defendants' claimed confessions or admissions. In support thereof defendants cite *People* v. *Leavitt,* 100 Cal.App. 93 [279 P. 1056]. ▆ There is a distinction between an admission

and a confession. (*People* v. *Sprado*, 72 Cal.App. 582 [237 P. 1087].) An admission is not to be excluded because induced by a statement that it would be better for a defendant to tell the truth. The term "admission," as applied to criminal law, relates to matters of fact that do not necessarily involve a criminal intent, whereas, a "confession" is restricted to an acknowledgment of guilt, and it does not include admissions of mere acts of guilty conduct or of subordinate facts not constituting guilt. (*People* v. *Fowler*, 178 Cal. 657 [174 P. 892]; 8 Cal.Jur. 107, sec. 199, and cases cited.) ▇▇▇ We will not dwell very long upon the question of the admissions or confessions of defendant Thompson. He took the stand, and "to the astonishment of his attorney," admitted the truth of them. He at no time repudiated the admissions made by him. Thompson cannot now claim he was prejudiced by the court's ruling. Defendant Sourisseau did testify that the alleged confessions and statements made by him were "not true" and that he got the "impression" from the officer's statements that it would be better for him if he made the statements as given; that he was placed in a cell by himself prior to making the statements and he "knew" that after making them he would be allowed to be in a tank with the other prisoners. He at no time told the jury what his version of the facts were surrounding the alleged acts but only repudiated the statements he made to the officers. ▇▇▇ Whether a confession is free and voluntary is a preliminary question addressed to the trial court and to be determined by it and a considerable measure of discretion must be allowed that court in determining the question. The admissibility of such evidence so largely depends upon the special circumstances connected with the confession that it is difficult, if not impossible, to formulate a rule that will comprehend all cases. ▇▇▇ It is established law that a confession is not rendered involuntary or inadmissible in evidence merely because it was made to a police officer while the accused was under arrest or was under a state of great excitement. (*People* v. *Cokahnour*, 120 Cal. 253 [52 P. 505]; *People* v. *Hadley*, 175 Cal. 118 [165 P. 442].) ▇▇▇ A mere concealed hope of the defendant that his statement would have the effect of lightening his punishment does not render his statement inadmissible if that hope is not improperly induced. (*People* v. *Luis*, 158 Cal. 185 [110 P. 580].) In the Leavitt case, relied on by counsel

for defendants, the claimed confession was the only evidence outside of that of an accomplice tending to connect the defendant with the commission of the crime, and that evidence was not such as to clear the case from doubt as to what verdict should have been rendered. ██ In the instant case there is overwhelming evidence, independent of the alleged confession, to establish defendants' guilt. The trial court allowed counsel full opportunity to examine the officers on *voir dire,* and fully considered the evidence as to whether the alleged confession was voluntary or involuntary. The jury was also instructed that if it believed the confessions of defendants were made under inducements or promises, it was its duty to disregard them. These same matters were again presented and considered by the court on the motions for new trial. In *People* v. *Castello,* 194 Cal. 595 [229 P. 855], it was held that a reviewing court cannot say that the trial court committed error in admitting the confession of guilt unless such error appears as a matter of law from the record presented, and where the evidence is conflicting on the subject it must be assumed that the testimony concerning defendant's confession was properly admitted and that where physical facts and circumstances corroborate confessions of guilt, the reasoning of the rule which would otherwise exclude involuntary confessions to this extent ceases to exist. (See, also, *People* v. *Lehew,* 209 Cal. 336 [287 P. 337]; *People* v. *Hopkins,* 57 Cal.App.2d 382 [134 P.2d 299]; *People* v. *MacDonald,* 24 Cal.App.2d 702, 705 [76 P.2d 121]; *People* v. *Ellis,* 33 Cal.App.2d 616 [92 P.2d 431].) We cannot perceive how the admission into evidence of the claimed confession, under the facts of this case, operated as prejudicial error justifying a reversal of the judgment where the conviction was so overwhelmingly supported by other independent evidence.

Seventh, numerous exceptions have been taken to the rulings of the trial court on questions propounded to several witnesses. Suffice it to say we have fully examined the record in respect thereto and find no prejudicial error.

██ Eighth, the trial court's failure to give an instruction on the question of corroboration of the testimony of an accomplice is raised. Defendants offered no instruction on the subject. *People* v. *Warren,* 16 Cal.2d 103 [104 P.2d 1024], relied upon by defendants, is not applicable here. There it was said that when the jury might well have con-

cluded that a witness was an accomplice and where the defendant would have been entitled to an acquittal by reason of lack of corroboration of the testimony of the witness, it was prejudicial error for the trial court to fail to give such an instruction. It was there held that the trial court should have given it on its own motion even though defendant did not request such an instruction. In the instant case there is an abundance of evidence justifying the conviction independent of any testimony that may have been given by any claimed accomplice. Therefore, the rule applied in *People* v. *Warren, supra,* does not apply here. The rule that is applicable is stated in *People* v. *West,* 4 Cal.2d 367, 371 [49 P.2d 276]. In the instant case the trial court did fail to give such an instruction but, at defendant's request, did give an instruction to the effect that any confession of a codefendant or an accomplice, after the commission of the crime, is inadmissible against the other defendant unless made in his presence. The trial judge even went so far as to tell the jury that ''any confession or admission of . . . Thompson, in the present case, cannot be used against . . . Sourisseau.'' We see no prejudicial error in the failure of the trial court to give the suggested instruction.

Ninth, the last objection which need be mentioned involves the failure of the court to give thirteen of defendants' proffered instructions. Suffice it to say we have fully examined those instructions and have compared them with the instructions given. The subject matter is either fully covered by other instructions or they were otherwise properly refused.

The judgments and orders appealed from are affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 13, 1944.